### EMBRY *v.* PALMER.

1. The Supreme Court of the District of Columbia is a court of the United
   States, and its judgment, when suit is brought thereon in any State of the
   Union, is, under the legislation of Congress, conclusive upon the defendant,
   except for such cause as would be sufficient to set it aside in the courts of
   the district.

2. A. recovered judgment in that court against B. and C., who, when sued thereon
   in a State court, filed their bill to enjoin the collection of so much thereof
   as they claimed was in excess of the amount due on the original cause of
   action, and alleged, as a ground of relief, matter available as a defence in
   the action at law, which they were not prevented from setting up by acci-
   dent, or by the fraud of A., unconnected with the negligence of themselves
   or agents.   The court perpetually enjoined A. from suing on the judgment
   on their paying into court that amount.   They did so, and A. received it.
   The decree was affirmed by the court of last resort in the State.   *Held,*
   1. That, according to the law then in force in the District of Columbia, the

bill not being sufficient to authorize the relief granted, the decree does not give the required effect to the judgment, and this court has jurisdiction to re-examine it on a writ of error. 2. That A., by accepting the amount so paid, is not estopped from prosecuting that writ.

ERROR to the Supreme Court of Errors of the State of Connecticut.

James H. Embry, administrator of Robert J. Atkinson, deceased, brought, in January, 1872, his action in the Supreme Court of the District of Columbia, against Stanton and Palmer, to recover compensation for professional services alleged to have been rendered, in their behalf and at their request, by his intestate, in prosecuting and recovering for them the amount of certain claims in their favor against the United States. In this action they appeared and defended, and judgment was rendered against them upon a verdict for $9,185.18. Upon a writ of error, issued out of this court, this judgment was affirmed, upon grounds which appear in the report of the case. *Stanton* v. *Embry,* 93 U. S. 548.

Subsequently, in 1877, Embry brought his action upon this judgment against the defendants, in the Superior Court for New London County, Connecticut, where they resided, in order to obtain judgment and execution thereof in that State. Thereupon they filed their petition in equity in the same court, the object and prayer of which were to obtain a perpetual injunction, restraining him from prosecuting his action upon that judgment, or in any manner enforcing it against them, upon their payment of $2,296.25, which they alleged was as much as he was equitably entitled to on account of the causes of action, on which the judgment had been rendered.

The grounds of relief alleged in this petition may be shortly but sufficiently stated, as follows, viz.: That the claim in question was for collecting from the United States the sum of $45,925.91, under a special written agreement for a compensation to Atkinson of five per cent on that amount, the existence of which was well known to Embry when he brought his suit in the Supreme Court of the District of Columbia; that when he, as administrator of Atkinson, first presented to Stanton and Palmer the account for payment, it was for $2,296.29, being at that rate; that they, claiming to have a good defence

against it, declined to pay it, when he thereupon brought suit for that amount, in Connecticut, in 1871, which he discontinued in 1872, and, during its pendency, brought the action in which the judgment complained of was rendered, in which he ignored the special agreement, and sued upon a *quantum meruit;* that Palmer, one of the defendants, at the time of the trial was absent from the District of Columbia, and was not notified of the day of trial in time to be present; that Stanton, though present in Washington at the time, was unable to attend the trial on account of sickness; that since the trial Stanton, on examination, had found among his papers two letters from Atkinson, in which the latter expressly acknowledged the existence of the special contract for fees at five per cent, as claimed, but they were discovered too late for use on the trial; and that Embry, in suppressing his knowledge of the existence of this contract, and in procuring a judgment for a larger sum, was guilty of fraud, which made it inequitable in him to enforce the judgment to its full extent.

A general demurrer to this petition, reserved to the Supreme Court of Errors of Connecticut for its advice, was overruled, that court being of opinion that the petition was sufficient. Its decision is reported in 46 Conn. 65, treating the case made in the petition as one of fraud in procuring an unjust judgment admitted by the demurrer.

Embry then filed his answer to the petition, in which he denies that he made out the account as originally presented at the rate of five per cent on the amount collected, to conform to any agreement between the parties, but because he found from Atkinson's books that he had charged at that rate in other cases, and without considering the difference of value in the services rendered in them; and that Atkinson kept no copies of the letters written to the petitioners. He claims that the question, whether there was any contract between the parties, and if so, what were its terms, was fully tried and finally decided in the action, which resulted in the judgment complained of, and which he sets up as an estoppel. He denies that he then or at any time knew of any contract between the parties as to fees, and claims that if the petitioners failed in that action to substantiate a defence, it was through their own laches, and not by reason of any fraud on his part.

In accordance with the practice in that State, the cause was referred to a committee, whose report of the facts constitutes part of the record, from which the following extract is taken : —

"At [the time of] the trial of this case at Washington neither Stanton nor Palmer was present in court. Palmer was at Stonington ; his attendance might have been secured by reasonable diligence, if such attendance had been deemed very important. Stanton was ill at his hotel in Washington, — too ill to attend the trial. His counsel asked for a postponement on that account; but no affidavit was offered in support of the motion, and it was denied. The petitioners' counsel appears to have been content to proceed with the trial in the absence of his clients. He had full and, as it turned out, undue confidence in the legal defences, which appear by the record to have been set up at the trial, and took it for granted that in no event could more be recovered than $2,296.29. The letters of Atkinson of February 18, 1870, and May 7, 1870, recognizing the special agreement for five per cent on claim D, were not in Washington at the trial there ; they were received by Stanton, the active partner, at a time when his mind was much depressed ; they were stored for safe keeping at his home in Stonington, Connecticut, and the contents had escaped his recollection ; they were not found by him until after the trial and disposal of the case at the general term.

"After the commencement of the suit at Washington he made search for all letters and papers relating to the case, and placed in possession of his counsel such as he found ; and he then supposed that he had found and placed in the hands of counsel all the letters and papers pertaining to the matters in suit. As bearing on the question how it happened that these letters escaped the recollection of Stanton, it appears that for several reasons the attention of the petitioners was not alive to the importance of being prepared at the trial in Washington with the proof of the special agreement which the letters furnished: 1. Because the petitioners took it for granted that the full extent of the plaintiff's claim at the trial would be $2,296.29, that being the amount of the claim D presented through Mr. Pratt; and it did not occur to them that a larger amount might be claimed under the *quantum meruit* count.

2. Because their counsel had undue confidence in legal defences against the entire demand, and therefore did not apprehend the full importance to the interests of his clients of being prepared with proof of the special agreement.

"As to specification 7th in the petition, Atkinson, while living, had full knowledge that the amount due him was but $2,296.29, on a special contract for that amount, and he, if living, could not, with a good conscience, have presented a claim for a greater amount. Embry, the administrator, knew that Stanton and Palmer claimed a special contract, and was willing before trial was brought to settle on that basis; but his claim in court on a *quantum meruit* was not on his part an intentional *suggestio falsi*. He did not know that the claim was unfounded; the full proof of the special agreement was not in his possession, and had not been fully brought to his knowledge."

What decree should be passed in the cause upon this report was reserved for the action of the Supreme Court of Errors; which court, after argument, advised that the prayer of the petition be granted, on condition that the petitioners pay to the respondent the sum of $2,296.29, within a reasonable time to be fixed, with interest thereon from March 10, 1871, which was accordingly so ordered; and the said sum of money having thereupon been paid by the petitioners to the attorney of the respondent, and received by him, with the interest thereon, it was ordered and decreed by the Supreme Court that he be enjoined, under a penalty of $20,000, payable to them, to abstain and desist from the further prosecution of his suit upon the judgment, and from instituting any other suit or action thereon, or from executing or in any manner enforcing the same against them.

Proceedings in error were taken in due form to review this judgment in the Supreme Court of Errors of the State, it being assigned for error "that the decree is in contravention of art. 4, sect. 1, of the Constitution of the United States, and sect. 905, c. 17, tit. 13, of the Revised Statutes of the United States, in that it enjoins the prosecution of a suit on a judgment of the Supreme Court of the District of Columbia," and "that the decree enjoins the collection of a judgment of a court of the United States."

The opinion of the Supreme Court of Errors in passing upon the case as presented by the report of the committee, and advising as to the decree to be rendered thereon, is reported in *Stanton* v. *Embry*, 46 Conn. 595.

The final decree entered in pursuance thereof, and affirmed by that court, is now, by writ of error, brought here by Embry for review.

*Mr. Edward Lander* and *Mr. Amos L. Merriman* for the plaintiff in error.

*Mr. Jeremiah Halsey* and *Mr. Charles W. Hornor* for the defendants in error.

MR. JUSTICE MATTHEWS, after stating the case, delivered the opinion of the court.

A suggestion is made in argument that Embry is estopped to prosecute this writ to the reversal of the decree below, because it appears that the amount of money ordered by it to be paid to him as a condition of relief granted has been accepted by him. It is said that this is a release of errors. Without entering upon a discussion of the general question, it is sufficient for the present purpose to say that no waiver or release of errors, operating as a bar to the further prosecution of an appeal or writ of error, can be implied, except from conduct which is inconsistent with the claim of a right to reverse the judgment or decree, which it is sought to bring into review. If the release is not expressed, it can arise only upon the principle of an estoppel. The present is not such a case. The amount awarded, paid, and accepted constitutes no part of what is in controversy. Its acceptance by the plaintiff in error cannot be construed into an admission that the decree he seeks to reverse is not erroneous; nor does it take from the defendants in error anything, on the reversal of the decree, to which they would otherwise be entitled; for they cannot deny that this sum, at least, is due and payable from them to him. But in every point of view the objection is met and answered by the decision of this court in the case of *United States* v. *Dashiel*, 3 Wall. 688.

The jurisdiction of the court invoked by this writ of error is conferred by sect. 709, Rev. Stat., it being a case in which a title or right is claimed under an authority exercised under the

United States, and the decision of the State court being, in denial of the title or right so asserted. It was decided in. *Dupasseur* v. *Rochereau*, 21 Wall. 130, that such a question is undoubtedly raised whenever " a State court refuses to give effect to the judgment of a court of the United States rendered upon the point in dispute, and with jurisdiction of the case and of the parties." The judgment, which is the subject-matter of the litigation, is that of the Supreme Court of the District of Columbia, which is a court of the United States. The question we have to determine is whether the Supreme Court of Errors of the State of Connecticut, in the decree complained of, gave to that judgment its due effect.

Section 905, Rev. Stat., which embodies the original act of May 26, 1790, c. 11, and the supplement thereto of March 27, 1804, c. 56, provides that the records and judicial proceedings, not only of the courts of any State, but also of any Territory, or of any country subject to the jurisdiction of the United States, authenticated as therein prescribed, " shall have such faith and credit given to them, in every court within the United States, as they have by law or usage in the courts of the State from which they are taken;" which, by supplying the ellipsis, must be taken to mean, such faith and credit as they are entitled to in the courts of the State, Territory, or other country subject to the jurisdiction of the United States from which they are taken.

So far as this statutory provision relates to the effect to be given to the judicial proceedings of the States, it is founded on art. 4, sect. 1, of the Constitution, which, however, does not extend to the other cases covered by the statute. The power to prescribe what effect shall be given to the judicial proceedings of the courts of the United States is conferred by other provisions of the Constitution, such as those which declare the extent of the judicial power of the United States, which authorize all legislation necessary and proper for executing the powers vested by the Constitution in the government of the United States, or in any department or officer thereof, and which declare the supremacy of the authority of the national government within the limits of the Constitution. As part of its general authority, the power to give effect to the judgments

of its courts is coextensive with its territorial jurisdiction. That the Supreme Court of the District of Columbia is a court of the United States, results from the right of exclusive legislation over the District which the Constitution has given to Congress. Accordingly, the judgments of the courts of the United States have invariably been recognized as upon the same footing, so far as concerns the obligation created by them, with domestic judgments of the States, wherever rendered and wherever sought to be enforced. *Barney* v. *Patterson*, 6 Har. & J. (Md.) 182; *Niblett* v. *Scott*, 4 La. Ann. 246; *Adams* v. *Way*, 33 Conn. 419; *Womack* v. *Dearman*, 7 Port. (Ala.) 513; *Pepoon* v. *Jenkins*, 2 Johns. (N. Y.) Cas. 119; *Williams* v. *Wilkes*, 14 Pa. St. 228; *Turnbull* v. *Payson*, 95 U. S. 418; *Cage's Ex'rs* v. *Cassidy*, 23 How. 109; *Galpin* v. *Page*, 3 Sawyer, 93, 109.

The rule for determining what effect shall be given to such judgments is that declared by this court, in respect to the faith and credit to be given to the judgments of State courts in the courts of other States, in the case of *M'Elmoyle* v. *Cohen*, 13 Pet. 312, 326, where it was said: "They are record evidence of a debt, or judgments of record, to be contested only in such way as judgments of record may be; and, consequently, are conclusive upon the defendant in every State, except for such causes as would be sufficient to set aside the judgment in the courts of the State in which it was rendered."

The question then arises, what causes would have been sufficient in the District of Columbia, according to the law then in force, to have authorized its courts to set aside the judgment recovered there by Embry against Stanton and Palmer?

This is answered by the decision of this court, upon the point, in the case of *Marine Insurance Company of Alexandria* v. *Hodgson*, 7 Cranch, 332. That was a bill in equity, filed in a court of the District of Columbia, perpetually to enjoin the collection of so much of a judgment at law recovered in the District as was in excess of an amount claimed to be the sum equitably due. The grounds of relief alleged were that a fraud had been practised upon the underwriters in a valued policy of marine insurance, by an over-valuation of the ship, and that the complainant had been prevented from making the defence

at law.   Chief Justice Marshall, delivering the opinion of the
court, affirming the decree of the court below dismissing the
bill, stated the rule as follows: —

"Without attempting to draw any precise line to which
courts of equity will advance, and which they cannot pass, in
restraining parties from availing themselves of judgments ob-
tained at law, it may safely be said that any fact which clearly
proves it to be against conscience to execute a judgment, and
of which the injured party could not have availed himself in a
court of law, or of which he might have availed himself at law,
but was prevented by fraud or accident, unmixed with any
fault or negligence in himself or his agents, will justify an
application to a court of chancery.   On the other hand, it may
with equal safety be laid down as a general rule that a defence
cannot be set up in equity which has been fully and fairly tried
at law, although it may be the opinion of that court that the
defence ought to have been sustained at law.   In the case
under consideration the plaintiffs ask the aid of this court to
relieve them from a judgment, on account of a defence, which,
if good anywhere, was good at law, and which they were not
prevented, by the act of the defendants, or by any pure and
unmixed accident, from making at law."

This was held to be the law prevailing in the District of
Columbia, not by reason of any local peculiarity, but because
it was a general principle of equity jurisprudence.   It was re-
peated in *Hendrickson* v. *Hinckley*, 17 How. 443, where the
rule was condensed by Mr. Justice Curtis into the following
statement: "A court of equity does not interfere with judg-
ments at law, unless the complainant has an equitable defence,
of which he could not avail himself at law, because it did not
amount to a legal defence, or had a good defence at law, which
he was prevented from availing himself of by fraud or acci-
dent, unmixed with negligence of himself or his agents."
*Creath* v. *Sims*, 5 How. 192; *Walker* v. *Robbins*, 14 id. 584.
It was reaffirmed in *Crim* v. *Handley*, 94 U. S. 652, and in
*Brown* v. *County of Buena Vista*, 95 id. 157.

This is the doctrine recognized and applied by the Supreme
Court of Errors of Connecticut in the case of *Pearce* v. *Olney*,
20 Conn. 544.   That was a bill in equity to restrain the collec-

tion of a judgment recovered in New York, upon the ground that the complainant had a good defence at law to the action, which he was prevented from making by the fraud of the defendant. It was there said by that court: " It is well settled that this jurisdiction will be exercised, whenever a party, having a good defence to an action at law, has had no opportunity to make it, or has been prevented by the fraud or improper management of the other party from making it, and by reason thereof a judgment has been obtained which it is against conscience to enforce." Then stating that the action was founded on an alleged contract, on which the complainant was not personally liable, having been made by him as agent for a corporation, and that this was known to the party suing, the court continue: " If this was all, the plaintiff would have no remedy, however unjust it might be to compel him to pay that judgment. Still, as he was duly served with process in that suit, it was his duty to make defence in it; and an injunction ought not to be granted to relieve him from the consequences of his own neglect."

The court then proceeds to show that he not only had a good defence, but that it was his intention to make it, which he would have done had he not been led by the assurances of the attorney for the plaintiff in the action to believe that it had been abandoned, so that its subsequent prosecution, without further notice, operated as a surprise, tantamount to a fraud ; and that, consequently, there was no ground on which to impute laches to the complainant in not defending himself at law.

A subsequent action was brought in New York upon the same judgment by an assignee of the plaintiff, to which the defendant set up as a bar the Connecticut decree perpetually enjoining its execution, which, by the judgment of the Court of Appeals of New York, was sustained. *Dobson* v. *Pearce*, 12 N. Y. 156. The court said : " The decree of the Court of Chancery of the State of Connecticut, as an operative decree, so far as it enjoined and restrained the parties, had and has no extra-territorial efficacy, as an injunction does not affect the courts of this State ; but the judgment of the court upon the matters litigated is conclusive upon the parties everywhere and in every forum where the same matters are drawn in question.

It is not the particular relief which was granted which affects the parties litigating in the courts of this State; but it is the adjudication and determination of the facts by that court, the final decision that the judgment was procured by fraud, which is operative here, and necessarily prevents the plaintiff from asserting any claim under it."   p. 167.

The same rule, as to the jurisdiction in equity to enjoin the enforcement of judgments at law, was declared by the Supreme Court of Errors of Connecticut in the case of *Carrington* v. *Holabird*, 17 Conn. 530, in these words: " This jurisdiction will be exercised where to enforce a judgment recovered is against conscience, and where the applicant had no opportunity to make defence, or was prevented by accident, or the fraud or improper management of the opposite party, and without fault on his own part."

To the same effect is the case of *Borland* v. *Thornton*, 12 Cal. 440, where the subject is discussed and the authorities cited.

These, then, are the principles which should have governed the Supreme Court of Errors of Connecticut in the proceedings and judgment now under review.   It remains to ascertain whether they were in fact applied in its dealing with the judgment sought to be enforced by the plaintiff in error.

No question is made of the right of that court to entertain the jurisdiction to enjoin proceedings upon the judgment, notwithstanding it was the judgment of a court of the United States.   It had jurisdiction of the person of the plaintiff in error, who was himself seeking the aid of the courts of that State in his suit at law upon the judgment for the purpose of enforcing it.

Nor is any inquiry opened, upon this writ of error, as to any matter of fact found in the record before us.   The facts, as ascertained and acted upon by the State court, are assumed to be true.   They are contained in the report of the committee appointed to hear the evidence and report its conclusions of fact, which were accepted by the court, and they are not the subject of any exception.

The Supreme Court of Errors of Connecticut state the grounds of their judgment in the report of the case, *Stanton*

*v. Embry*, 46 Conn. 595, and hold that upon its circumstances it comes within the rule laid down in *Pearce* v. *Olney*, 20 id. 544, already noticed. The conduct of the plaintiff in error, alleged as the ground for granting the relief decreed, is, that he " unintentionally gave them (the complainants) every reason for thinking that he did not believe that he had any right to ask for a judgment for a larger sum, and, of course, that he would not; he unintentionally led them to believe and act upon the belief, that the only loss which could possibly ensue from either a partial or a total omission of preparation for trial would be the sum of $2,296.25." The solitary fact upon which these inferences rest is, that the plaintiff in error originally presented an account for payment, claiming that sum, as a commission at the rate of five per cent upon the amount collected, and the complainants refusing to pay any part of it, on the ground of defences which applied to the whole of it, he brought his first suit in Connecticut against them, and in his declaration joined a special count on an agreement for this rate of compensation, with a general count upon a *quantum meruit.* The declaration in the action, in which judgment was rendered by the Supreme Court of the District of Columbia, contained two similar counts. It is argued from this that the claim for $10,000 damages, appropriate to the *quantum meruit* count, could only have been regarded as a form of pleading, not calculated to remove from the minds of the defendants sued " the effect produced by the precise and explicit statement of the bill of particulars; " which, regarding as obtained presumptively from the papers of the decedent, they had a right to treat as " equivalent to a declaration that those papers furnished positive evidence that there was a contract calling for payment at that rate; " that the plaintiff in error by " no act or word gave any intimation that he considered himself entitled to or intended to claim more; " and that all this was " calculated to and did in fact produce the belief on their part that no more would in any event be asked of the court than to assess the damages according to the terms of the contract."

It is admitted, however, that the plaintiff in error did not know of the alleged special contract; that he did not intend to give to the defendants in error any assurances on the subject,

and that he did not know that they were relying upon what they now allege has misled them.

In all this there is certainly no fraud; in fact, there is not enough to suggest a fault on the part of the plaintiff in error. He presented an account, which, it is now confessed, for them, if not by them, that the defendants in error ought at the time to have paid. This they refused to do, denying all liability for any amount, on the ground that no legal claim could arise for services, such as were rendered, no matter how valuable they had been. Suit was then brought upon the claim, both upon an express and an implied contract. It was contested at every point. The parties were adversaries, and there is no ground whatever for any claim on the part of the defendants in error, that they were relying upon assurances of any character upon the part of Embry. If they took anything for granted, it was upon their own responsibility and at their own risk. They neither expected nor feared a recovery against them for any excess beyond the contract rate, because they were confident they would defeat it altogether. Embry was an administrator. He had sought to obtain payment without litigation, and failed. It was his duty to sue for and recover whatever the law would give him. He owed no duty to his adversaries, except the opportunity of defence. That they have enjoyed, if not improved; and if it has not been as available as it would have been, in case they had limited themselves, as they claim their opponent should have done, to the special contract, which they now insist was binding upon both him and them, it was, as found in this record, in part at least, "because their counsel had undue confidence in legal defences against the entire demand, and, therefore, did not apprehend the full importance to the interests of his clients of being prepared with proof of the special agreement." That agreement they sought to avoid on the ground that it was illegal and immoral to contract for any compensation for the services rendered; and having deliberately staked their case upon that single issue, they seek to impute to their adversary the responsibility of their own mistake.

The laches of the defendants in error is equally manifest. One of them was absent from the trial; the report of the

committee states that " his attendance might have been se-
cured by reasonable diligence, if such attendance had been
deemed very important." The other was in Washington, but
too ill to attend the trial. His counsel asked a postponement
on that account;. but, as the report continues, " no affidavit was
offered in support of the motion, and it was denied. The peti-
tioners' counsel appears to have been content to proceed with
the trial in the absence of his clients. He had full and, as it
turned out, undue confidence in the legal defences which ap-
peared by the record to have been set up at the trial, and took
it for granted that in no event could more be recovered than
$2,296.29." There were two letters from Atkinson to the de-
fendants in error in their possession, and not known to the
plaintiff in error, expressly referring to the special agreement
as fixing the rate of compensation, which might have been pro-
duced on the trial, but were not. They had escaped the recol-
lection of the active partner, Stanton, who, for the preparation
of the defence, had placed in the hands of his counsel in Wash-
ington all the papers which he supposed related to the subject
of the suit. The letters' referred to were not found by him
until after the trial and disposition of the case in the Supreme
Court of the District of Columbia. It is entirely clear from
this statement that the defendants in error are chargeable with
carelessness and want of diligence in not making and sustain-
ing the defence on the ground of an express agreement for a
fixed rate of compensation. It is fully accounted for by the
other facts in the case. The report of the committee states
that they were " not alive to the importance of being prepared
at the trial in Washington with the proof of the special agree-
ment which the letters furnished;" and for the reason that
they took it for granted, without sufficient grounds, as we have
already seen, that no recovery could be had for a larger
amount, and this was based chiefly on their overweening confi-
dence in their ability to defeat the recovery altogether.

But this is not all. The question whether there was not a
special agreement limiting the compensation, as appears by the
record in the case, was left to the jury upon evidence sub-
mitted. It was one of the points of the issue, and was so
regarded by both parties. The counsel for the defendants in.

error asked an instruction to the jury on the subject, and the court did instruct the jury in reference to it. After the verdict, a motion for a new trial was made on two grounds, first, that the damages were excessive, and, second, " that since the trial evidence vital to the case has been discovered." That motion was overruled, and an appeal was taken to the general term, where the judgment was affirmed. The motion for a new trial does not disclose what new evidence had been discovered, nor was any affidavit filed setting out its materiality, the circumstances of its discovery, and the reasons why it could not have been produced at the trial. There is no reason to doubt but that the evidence in question consisted of the very letters referred to.

It thus appears that after the trial, and after the consequences of the failure of the defendants in error to make good the defence now relied on had become manifest, they had the opportunity to bring the very matter to the attention of the Supreme Court of the District, and did in fact appeal to its discretionary power to grant a new trial for reasonable and sufficient cause. The motion for a new trial was made March 17, 1873, was not overruled at special term till April 19, 1873, and the appeal to the general term was not disposed of until Oct. 27, 1873, and in fact, owing to an irregularity in the entry of judgment, the verdict was under the control of the court until Sept. 28, 1874. During this interval there was ample time in which to present the facts and the application, and all illusions as to the intentions of the plaintiff in error had been dispelled by the trial and verdict. If it was not brought forward, it was from pure neglect. If it was, as it appears to have been, a court of competent jurisdiction has passed upon the very matter sought to be again litigated in the courts of Connecticut. The judgment of the Supreme Court of the District of Columbia refusing to grant a new trial was final. It was not, for that cause, subject to be reviewed on an appeal or a writ of error in any superior jurisdiction, and, for the same cause, it is not to be reviewed elsewhere. In *Marine Insurance Company* v. *Hodgson, supra*, the court had refused to permit the defendant to file the additional pleas raising the defence which was the basis of the application for relief in equity.

The court, when the original case was before it on a writ of error, said: "This court does not think that the refusal of an inferior court to receive an additional plea, or to amend one already filed, can ever be assigned for error. This depends so much on the discretion of the court below, which must be regulated more by the particular circumstances of every. case, than by any precise and known rule of law, and of which the Supreme Court can never become fully possessed, that there would be more danger of injury in revising matters of this kind than what-might result now and then from an arbitrary or improper exercise of this discretion." 6 Cranch, 206, 217. In *Crim* v. *Handley*, 94 U. S. 652, 659, it was said: "Nor does the allegation that one of his witnesses was sick during the examination, that it impaired his recollection and rendered him incapable of stating material facts within his knowledge, afford any sufficient support to the present application. Accidents of the kind occasionally occur in the course of the trial; but the plain remedy for such an embarrassment is an application to the court to postpone the trial or to continue the case, as the circumstances may require. Applications of the kind, if well founded, are seldom or never refused; but if a party elects to proceed and take his chance of success, he cannot, if the verdict and judgment are against him, go into equity and claim to have the judgment enjoined. If a witness is too unwell to testify understandingly, the proper remedy for the party is to move for a postponement of the trial; and if he elects to proceed and is unsuccessful, his only remedy is a motion for new trial to the court where the accident occurred."

The Supreme Court of Errors of Connecticut rest their judgment upon another ground, which it is proper to examine and consider. It may be stated as follows: That Atkinson, himself, if alive, could not have obtained a judgment, except upon his special contract, without such a suggestion of a falsehood as would have made it unconscionable for him to retain it; that the administrator, representing him, stands in no different position, as he is seeking to enforce a judgment, which his intestate could not equitably do, and that his having "failed to come to the knowledge of the truth as to the debt, and in ignorance misled the court into the rendition of a wrongful judg-

ment, does not destroy the right of the petitioners to have the wrong corrected now that it is pointed out."

But, in our opinion, this view cannot be maintained. It seems to constitute the plaintiff the guardian, not only of his own rights, but also of his adversaries, and to relieve them from the obligation of taking any care of themselves. We are not prepared to say, that, if Atkinson, in his lifetime, had presented his account for the amount now admitted to be due upon the contract, and had been told by Stanton and Palmer that they repudiated all liability on the ground that his services were illegal and against public policy, and therefore not entitled to compensation at all, he would have been guilty of any breach of law or morals, in insisting upon whatever the law would award for their actual value. Certainly, he was not bound, after that, to confine his claim to the limits of a contract which the other parties refused either to recognize or perform; and if, on suit brought, he left them to use it as a defence, if they saw fit, or to waive it for the chance of defeating his recovery altogether, we know of no principle of equity which would forbid it. It is to be remembered that there is nothing unconscionable or oppressive in the judgment itself, which is the subject of the present complaint. It represents, by the adjudication of a competent judicial tribunal, having full jurisdiction of the parties and the controversy, the reasonable, actual value of beneficial services rendered by Atkinson to the defendants in error. No fraud or unfairness was practised by the plaintiff in error in procuring it. The defendants in error had abundant opportunity to make the defence they now urge, and if they failed to do so, it was altogether their own fault. The judgment is conclusive between the parties, upon all the points made in the present suit, in the jurisdiction where it was rendered, and was entitled to be so regarded in the courts of Connecticut. In restraining further proceedings upon it, in the terms of the decree under review, the Supreme Court of Errors of that State have not given it that due effect to which, under the authority of the Constitution and laws of the United States, it is entitled. In that respect, there is manifest error in its decree, to the prejudice of the plaintiff in error, for which it must be reversed, and the cause remanded to

the Supreme Court of Errors of the State of Connecticut, with instructions to reverse the decree of the Superior Court within and for the county of New London, and to direct that court to render a decree dismissing the bill. It is accordingly

*So ordered.*