EDWARDS et al. v. SMITH.

(Court of Civil Appeals of Texas. San Antonio. April 26, 1911. On Motion for Rehearing, May 31, 1911.)

1. EVIDENCE (§ 345*)—DOCUMENTARY EVIDENCE—ATTESTATION—JUDICIAL RECORDS AND PROCEEDINGS.

Under Rev. St. U. S. § 905 (U. S. Comp. St. 1901, p. 677), which provides that the judicial proceedings of the courts of any state may be proved or admitted in evidence in any other courts within the United States by the attestation of the clerk with a certificate by the presiding judge that the attestation is in due form, it is necessary that the attestation of the clerk be made by him personally, and not by deputy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1302–1314, 1331–1360; Dec. Dig. § 345.*]

2. EVIDENCE (§ 345*)—CERTIFICATION—JUDICIAL PROCEEDINGS—FEDERAL COURTS IN STATE COURTS.

Rev. St. U. S. § 905 (U. S. Comp. St. 1901, p. 677), relating to the authentication and

proof of judicial records and proceedings, does not apply to the United States courts.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1345; Dec. Dig. § 345.*]

3. EVIDENCE (§ 29*)—JUDICIAL NOTICE—LAWS OF STATES.

The federal courts take judicial notice of the laws of every state.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 48; Dec. Dig. § 29.*]

4. EVIDENCE (§ 345*)—CERTIFICATION—PROCEEDINGS OF STATE COURTS IN FEDERAL COURTS.

The federal courts do not require the certificate of a judge of a state court that the attestation of the clerk thereof is in due form.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1345; Dec. Dig. § 345.*]

5. EVIDENCE (§ 34*)—JUDICIAL NOTICE—LAWS OF UNITED STATES.

State courts take judicial notice of the laws of the United States.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 49, 50; Dec. Dig. § 34.*]

6. EVIDENCE (§ 345*)—CERTIFICATION—JUDGMENTS OF FEDERAL COURT IN STATE COURT.

Rev. St. U. S. § 905 (U. S. Comp. St. 1901, p. 677), relating to the authentication and proof of judicial records and proceedings, does not apply when a judgment of a federal court is offered in evidence in the courts of the state in which the federal judgment was entered.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 345.*]

7. JUDGMENT (§ 829*)—FOREIGN JUDGMENT—EFFECT OF JUDGMENT OF FEDERAL COURT IN STATE COURT.

A judgment of a federal court sued upon or offered in evidence in the courts of the state in which the federal court was sitting, whether as a foundation of an action or as a defense, either by plea or proof, is entitled, under the provisions of the federal Constitution as to full faith and credit, to the same effect given judgments of the state courts of equal authority.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1510–1515; Dec. Dig. § 829.*]

On Motion for Rehearing.

8. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—SPECIFICATIONS OF ERROR—MOTIONS FOR REHEARING.

An assignment of error to which no statement is subjoined as required by rule 31 (67 S. W. xvi), but which refers to the entire statement of facts for a verification of a statement made under a proposition in the brief, will not be considered on motion for rehearing.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

9. TRESPASS TO TRY TITLE (§ 41*)—PROCEEDINGS—EVIDENCE—TITLE FROM STATE.

In trespass to try title, the plaintiff claimed title through a duly confirmed deed of a master commissioner under a decree of the United States Circuit Court for the Northern District of Texas, conveying two surveys located by virtue of a land scrip and patented to a railroad company, and described by the numbers of the surveys, by geographical description, by courses and by acreage, and by mesne conveyances from such grantee containing the same description of the two surveys as that in the deed of the master commissioner. The last deed to plaintiff referred to the others for more particular description. *Held* that, in the absence of objection to the recitals in the deeds, the plaintiff showed title to both surveys under the sovereignty of the soil.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

10. TRIAL (§ 343*)—ON TRIAL OF ISSUES—DETERMINATION OF ISSUES.

Where the issue in trespass to try title is one of boundary between survey No. 10 and surveys Nos. 3 and 11, whether the land described in plaintiff's petition lies within Nos. 3 and 11 as claimed by plaintiff, or is a part of No. 10 as claimed by defendant, a verdict for the plaintiff, when read in connection with a proper charge, necessarily determines that the parcels of land sued for are within surveys Nos. 3 and 11, and are no part of survey No. 10, and is a determination of all the issues.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 343.*]

Appeal from District Court, Pecos County; W. C. Douglas, Judge.

Action by J. C. Smith against Wm. M. Edwards and others. Judgment against defendant Edwards and disclaimer by the other defendants, and he appeals. Affirmed.

W. C. Jackson, for appellant.

NEILL, J. Smith sued appellant and John M. and Jesse M. Edwards in trespass to try title to recover two tracts of land, one containing $44^3/_{10}$ acres out of the northwest part of survey No. 11, block 129, Texas & St. Louis Railroad Company, original grantee, in Pecos county, and the other containing 16 acres out of the southeast part of survey No. 3, same block and grantee. The suit was also to recover damages for the rental value of the land during the alleged period of its occupancy by the defendants. The last-named defendants disclaimed any interest in the land, and the appellant Wm. M. Edwards pleaded not guilty, and specially pleaded that on January 6, 1906, R. R. Wakefield was the equitable owner of section No. 11, block 129, described in plaintiff's petition, and put the improvements, consisting of a well, windmill, houses, etc., on land which was supposed to be on said section, but that in surveying section No. 10 of said block defendant ascertained said improvements, which are described in plaintiff's petition, were on that section, and that he then purchased from Wakefield a one-half interest in said improvements, paying $424 therefor, and was delivered possession of the same by him, and that defendant was dispossessed by a writ of sequestration wrongfully sued out in this case by plaintiff, and that defendant has been damaged in that sum by reason thereof

Conclusions of Fact.

The plaintiff holds survey No. 11, block 129, Texas & St. Louis Railroad Company, original grantee, and survey No. 3, same block and grantee, under a regular chain of title from and under the sovereignty of the soil down to himself; that is, if a certain deed made by Felix H. Robertson, as special master commissioner under a certain judgment or decree of the United States Circuit Court for the Northern District of Texas to Gist Blair on February 17, 1891, which is a

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

link in the chain, was properly admitted in evidence over the objection of defendant, appearing in our conclusions of law. The only issue of fact in the case is whether the land sued for or any part of it is within the boundaries of either of the surveys above mentioned. This issue was submitted to the jury by a proper charge, and there was an affirmative finding of it, which is supported by a preponderance of the evidence.

### Conclusions of Law.

1. It is complained that the court erred in admitting in evidence, over objection of the defendant, a copy of the judgment of the Circuit Court of the United States and of the proceedings thereunder, upon which rests the authority of Felix H. Robertson, as master commissioner, to sell the two surveys in question and execute the deed to the purchaser (Gist Blair), which is referred to in the foregoing conclusions of fact. The copy of the judgment or decree and proceedings thereunder show everything essential to the grantor's power to make the sale and deed to Blair, and that the sale was confirmed by the court.

The objections urged and here insisted on by the defendant to its introduction are: (1) That said record of the federal court is not legally authenticated, in that the judge of said court did not certify that the clerk's certificate to the copy offered in evidence was in due form; (2) that the certificate shows that it was made by a deputy and not by the clerk himself; and (3) that there was no copy of any report of sale shown, it purporting to be the action of the court on a report of sale of land. It appears that the certificate of the clerk to the copy of the record conformed in everything to section 905, U. S. Rev. Stats. (U. S. Comp. St. 1901, p. 677), save that it was not certified by the judge that the clerk's certificate is in due form, and that the certificate of the clerk was made by his deputy.

[1, 2] It has been held that it is essential to the authentication of a copy of a judgment under section 905, U. S. Rev. Stats., in order to render it admissible in evidence by reason of such authentication, for the certificate of the clerk to be made by the clerk of the court in person, and not by his deputy (Wharton on Ev. § 101; Hutchins v. Gerrish, 52 N. H. 205, 13 Am. Rep. 19; Duvall v. Ellis, 13 Mo. 203; Wilburn v. Hall, 16 Mo. 426; Willock v. Wilson, 178 Mass. 68, 59 N. E. 757), and for his certificate to be certified by the judge to be in due form (Trigg v. Conway, Hempst. 538, 14 Fed. Cas. No. 14,172; Craig v. Brown, Pet. C. C. 352, 3 Fed. Cas. No. 3,328; Callin v. Underhill, 4 McLean, 199, 2 Fed. Cas. No. 2,523); but this statute does not apply to the courts of the United States, but is limited in terms to the records and judicial proceedings of the state courts

(National Acc. Soc. v. Spiro, 94 Fed. 750, 37 C. C. A. 388); nor does it apply to judicial records of state courts where offered in evidence in a federal court (Mewster v. Spalding, 6 McLean, 24, Fed. Cas. No. 9,513); nor do we think it applicable where judicial records of a federal court are offered in evidence in a state court, especially when the federal judgment is of the state in whose court it is offered in evidence.

[3-6] As the federal courts take judicial knowledge of the laws of every state in the Union, and do not require the certificate of the judge of a state court that the attestation of the clerk thereof is in due form (Bennett v. Bennett, Deady, 299, Fed. Cas. No. 1,318), so do the state courts take judicial knowledge of the laws of the United States, and, for the same reason, should not require such attestation of the judge of a federal court that the certificate of the clerk of his court is in due form. The federal tribunals are not regarded as foreign to each other or to the state courts; and, when a judgment of a federal court is sued on or offered in evidence in a state court or in another federal court, it is entitled to full faith and credit under the Constitution.

[7] If judgments or decrees of the United States Circuit Courts sitting in this state should not be accorded here, whether as a foundation of an action or defense, either by plea or proof, such effect as would be given judgments or decrees of our courts of equal authority, the constitutional provision requiring that it be given full faith and credit would be violated. Turnbull v. Payson, 95 U. S. 418, 24 L. Ed. 439; McElmoyle v. Cohen, 13 Pet. 312-326, 10 L. Ed. 177; Embry v. Palmer, 107 U. S. 3-20, 2 Sup. Ct. 25, 27 L. Ed. 346; Crescent City Live Stock Co. v. Butcher's Union, 120 U. S. 141, 7 Sup. Ct. 472, 30 L. Ed. 614. Had the judgment and proceedings of the federal court which were admitted in evidence been of a state court with jurisdiction to adjudicate the matters determined by it, the copy of the record, certified to as it was, would have been clearly admissible under article 2306, Rev. Stats. of 1895, and full faith and credit accorded such judgment and proceedings. Hence we overrule the assignments which complain of its admission in evidence.

2. The third and fourth assignments, which complain of the sufficiency of the evidence to support the verdict, are disposed of adversely to the defendant by our findings of fact, and need not be further considered.

3. The charge of the court was not upon the weight of the evidence, as is complained by the fifth, sixth, and ninth assignments, but correctly submits the only issue of fact raised by it to the determination of the jury.

4. That none of the special charges requested by defendant should have been given is too apparent to require us to discuss any

of the assignments which complain of its refusal. They are all overruled.

There is no error in the judgment, and it is affirmed.

### On Motion for Rehearing.

In this motion it is claimed that we erred in our conclusions of fact in finding that plaintiffs hold title to surveys Nos. 11 and 3, under a regular chain of title from and under the sovereignty of the soil down to themselves, "because there is no evidence in the record, nor any introduced, to show that title to survey No. 3 had ever passed out of the state of Texas."

[8] It is claimed that attention was called to the absence of such evidence by appellant's brief under the sixth assignment of error. That assignment was not entitled under the rules of this court to consideration, because there is no such statement subjoined as is required by rule 31 (67 S. W. xvi). Lewis v. Houston Elec. Co., 39 Tex. Civ. App. 625, 88 S. W. 489, 112 S. W. 593. Certainly the rule does not contemplate that an appellant can have this court read the whole statement of facts by saying, "See entire statement of facts," for a verification of a statement made under a proposition in his brief. But, when the entire record is looked to, it does not appear that appellant's motion for a new trial contained any such ground therefor as is presented in this motion. If an assignment is not so briefed as to require its consideration, an appellate court cannot be compelled to consider it on a motion for rehearing.

But was it essential under the facts shown in this case that plaintiff show a patent from the state? Pretermitting the question as to whether the land in controversy was ever patented by the state, the evidence shows the title of plaintiff as follows: (1) That F. H. Robertson, master commissioner, under a decree of the United States Circuit Court of the Northern District of Texas, on September 25, 1890, sold certain lands mentioned in said decree, which included two surveys of the following description: "640 acres of land in Pecos county, Texas, known as survey No. 11, in block No. 129, on the waters of Pecos river, a tributary of the Rio Grande about 36 miles south, 51 degrees east from Fort Stockton, located by virtue of land scrip No. 70 issued December 18, 1880 and patented to the Texas & St. Louis Railway Company on February 15, 1887, by letters patent No. 25 Vol. 103 * * * 640 acres of land in Pecos county, Texas, known as survey No. 3, block No. 129, on the waters of Pecos river, a tributary of the Rio Grande, about 34½ miles south, 51 degrees east from Fort Stockton located by virtue of land scrip No. 66, issued December 18, 1880 and patented to the Texas & St. Louis Railway Co. on February 16, 1887 by letters patent No. 46 Vol. 103" —which sale was made by said commissioner to Gist Blair, which sale was on October 21, 1890, duly confirmed by said federal court, and the master was ordered to execute and deliver to said purchaser a deed to the land so sold; and that said commissioner, in pursuance to said order, did on February 17, 1891, make and deliver such deed to said purchaser, Gist Blair. (2) That on July 2, 1896, said Gist Blair by his deed of that date sold and conveyed the said lands, including the two surveys above described, to A. Oppenheimer. This deed describes the two surveys just as they are described in the deed by the master commissioner to Blair. (3) That on November 14, 1898, A. Oppenheimer, by his deed of that date, conveyed, among other lands, said sections Nos. 3 and 11, in block 129, to J. C. Smith. (4) In this deed reference is made to the other two for more particular description. (5) On January 23, 1901, J. C. Smith conveyed said surveys Nos. 3 and 11 in block 129 to R. R. Wakefield, reserving in his deed of conveyance a vendor's lien on the land for the unpaid purchase money. (6) On September 15, 1904, R. R. Wakefield, and his wife, Ida F., reconveyed said two surveys to J. C. Smith. (7) In the interim, between the dates of the two last-mentioned deeds, Wakefield went into possession of the land and made the improvements which are involved in this controversy. In his answer the defendant alleged that he purchased such improvements from Wakefield, who delivered the same to him.

[9] In the absence of any objection to the recitals in the aforementioned deeds, we think it sufficiently appears from them, when taken in connection with the decree under which the deed from the master commissioner to Gist Blair was made, that the plaintiff showed title to both surveys under the sovereignty of the soil down to himself.

Besides, it is apparent that any title that defendant had or claimed in either of the surveys was obtained from Wakefield, and, as Wakefield went into possession under a deed from plaintiff and afterwards reconveyed it to him, plaintiff's title was superior to the defendant's under that source.

[10] As is contended by the appellant, the sole question in this case is one of boundary between survey No. 10 and surveys Nos. 3 and 11 in block 129; i. e., whether the land described in plaintiff's petition lies within Nos. 3 and 11 as alleged in the petition or is a part of lot survey No. 10 as claimed by appellant. If it is comprehended by Nos. 3 and 11, as alleged, it is plaintiff's land, but, if it is within the boundaries of No. 10, it was the defendant's.

The verdict for the plaintiff, when read in connection with the charge, necessarily determines that the parcels of land sued for are within surveys Nos. 3 and 11; and hence it follows that it can be no part of survey No. 10, as claimed by appellant. Black v. Feeney, 137 S. W. 1161, decided by this court on May 3, 1911.

The motion is overruled.