CITY OF KANSAS CITY, KAN., et al. v. UNION PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. November 28, 1911.)

No. 3,546.

JUDGMENT (§ 437*)—DEFAULT—VACATION—NEGLIGENCE.

Defendant railroad company instituted suit against complainant city; the subpœnas being served on the mayor. No appearance or defense being made, a decree was rendered by default, and, after the expiration of the term, the city sued to set aside the decree because of alleged accident in failing to defend, showing that, according to custom, the subpœnas were sent to the city attorney, and during his absence were left on a table in his office, and that, for some reason not explained, they never came to his attention, he believing that, in gathering up and disposing of papers on his desk which he had himself placed there, he had disposed of them, either by placing them in a waste basket or putting them away with other papers. Held, that complainants under such circumstances were not free from negligence, and were therefore not entitled to relief.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 827; Dec. Dig. § 437.*]

Appeal from the Circuit Court of the United States for the District of Kansas.

Suit by the City of Kansas City, Kan., and others against the Union Pacific Railroad Company. To set aside a judgment recovered by default. Decree for defendant, and complainants appeal. Affirmed.

Richard J. Higgins (Nathan Cree, on the brief), for appellants.

R. W. Blair (B. W. Scandrett and C. A. Magaw, on the brief), for appellee.

Before HOOK and SMITH, Circuit Judges, and MARSHALL, District Judge.

HOOK, Circuit Judge. The question in this case is whether the city of Kansas City, Kan., and the city clerk were prevented by accident from defending a suit brought by the railroad company in the Circuit Court of the United States for the District of Kansas. Service in the suit was duly made on the mayor and clerk, but there was no appearance or defense, and a decree was rendered by default. To show accident, it is averred in the bill that many suits are instituted against the city, and that it was the custom of the mayor or other official to deliver or send the subpœnas or summonses served on him ei-

ther to the city attorney or to the city counselor; that the latter was frequently absent from his office, and in such cases it was the custom to leave the writs on the table in his office where they were usually found and due attention given them; that, pursuant to the custom, the chancery subpœnas in the suit brought by the railroad company were sent to the office of the city counselor and left on his table, but for some reason, which the complainants and the city counselor are unable to explain, the writs never came to the attention of the latter, nor did he know of the pendency of the suit until long after the default decree had been rendered; but from facts within their knowledge complainants "believe, and upon such information they aver the fact to be, that said city counselor in gathering up and disposing of the papers upon his desk which he himself had placed there, by accident, and not knowing that such papers were the subpœnas in question, but supposing they were a part of papers placed there by himself, gathered them up and disposed of them either by placing them in the waste basket or putting them away with other papers."

Accident is a well-known ground of equity jurisdiction, but it is universally agreed that he who invokes it to vacate a judgment or decree must, to prevail, be free from negligence in himself or his agent. Hendrickson v. Hinckley, 17 How. 443, 15 L. Ed. 123; Crim v. Handley, 94 U. S. 652, 24 L. Ed. 216; Embry v. Palmer, 107 U. S. 3, 11, 2 Sup. Ct. 25, 27 L. Ed. 346; Knox County v. Harshman, 133 U. S. 152, 10 Sup. Ct. 257, 33 L. Ed. 586; Rolling Mill Co. v. Ore Co., 152 U. S. 596, 14 Sup. Ct. 710, 38 L. Ed. 565. In Village of Celina v. Bank, 15 C. C. A. 495, 68 Fed. 401, it appeared that shortly after an action had been begun against the village the mayor called upon a firm of attorneys, and inquired whether they could attend to it, to which they replied that they could. After some further conversation about the case, the particulars of which do not appear, the mayor left the attorneys under a definite and positive belief that he had engaged them, and that they had agreed to attend to the case. Neither the mayor nor the attorneys paid further attention to the case until after judgment had been rendered, and, as in the case here, the term had elapsed and it had passed from the control of the court. On these facts the Circuit Court of Appeals of the Sixth Circuit held there was no ground for relief in equity.

We think it is quite plain that the complainants here were not free from negligence. The mayor whom the law appoints as one of the persons upon whom service of process shall be made was the chief executive of the city charged with the general supervision and control of all its officers and affairs. The custom of the city officials is of doubtful propriety. An ordinarily prudent man in the protection of his personal interests would hardly leave such important papers upon the office table of an absent lawyer without afterwards inquiring whether they had reached his attention, and certainly no less degree of care and diligence is incumbent upon those in positions of public trust. Even the equity rule which controlled the service of such a writ upon a defendant required that, if the copy be not delivered to him personally, it be left with some adult person in charge of his

abode.  Again, the city counselor is charged by law with the duty of attending to cases in court in which the city is a party.  According to the averments of the bill, he knew that many such suits were brought, and that the other city officials were in the habit of placing the papers giving notice of them and of the time when defense must be made upon a table in his office when he was absent, as was frequently the case.  It would certainly not be exercising reasonable care if with that knowledge he threw them into the waste basket or put them away with other papers without inspection or effort to determine their character.

There must of necessity be rules for the orderly conduct of business in the courts of which all are required to take notice, and to which all must conform or sustain the known consequences of omission.  Otherwise the administration of justice would be in confusion, and would lack that definiteness of progress and ending which is so essential to public welfare.  The requirement that litigants brought into court by process duly issued and served should file their pleadings according to law and be diligent in the assertion of their rights applies as well to artificial as to natural persons, and in respect of the former there is no distinction between municipal corporations and those organized for pecuniary gain.  And corporations unlike natural persons must necessarily act wholly through the medium of officers or agents whose acts or omissions within the scope of their powers or duties are attributable to their principals.

The decree is affirmed.