Max Swiren, Joseph P. Antonow and Hubert Nexon, all of Chicago, Ill. (Swiren & Heineman, of Chicago, Ill., of counsel), for Spanel.

George J. O'Grady and Robert McClory, both of Chicago, Ill. (Daily, Dines, White & Fiedler, of Chicago, Ill., of counsel), for Berkman.

**SPANEL v. BERKMAN et al. (two cases).**

**No. 9534, 9535.**

United States Court of Appeals
Seventh Circuit.

Dec. 20, 1948.

Rehearing Denied Jan. 14, 1949.

Before MAJOR, Cheif Judge, and MINTON and SPARKS, Circuit Judges.

MAJOR, Chief Judge.

These are appeals from a judgment, entered October 15, 1947, in an action for a declaratory judgment under Sec. 274d of the Judicial Code, 28 U.S.C.A. § 400 [now §§ 2201, 2202]. In No. 9534, the appeal is by the plaintiff from that portion of the judgment adverse to him, and in No. 9535, the appeal is by the defendants from a single provision of the judgment adverse to them.

We are faced at the threshold with defendants' motion to dismiss the appeal, filed February 16, 1948, and denied by this court on March 2, 1948, without prejudice to the defendants' right to renew said motion at the hearing of the cause on its merits. Such motion has been renewed and urgently pressed. The contention made is that the plaintiff recognized the correctness of

the judgment by the acceptance and satisfaction of a money award provided in the judgment in his favor, and is thereby precluded from appealing from that portion of the judgment which is adverse to him. The question thus presented requires some statement of the facts, as well as the issues which were involved below.

The contract attached to and made a part of the complaint relates to a process developed by defendants for the extraction of colloidal chlorophyll—a pigment substance —from plants. The contract is divided into Parts I, II and III. The contested issues below decided against the plaintiff relate in the main to the provisions of Part II. Parts I and III are involved only as they aid in the interpretation of the disputed issues under Part II.

Part I recognized the defendants as the inventors of the process and that they had pending applications for patents. They were required to conduct certain designated experiments for the purpose of ascertaining the medicinal value of colloidal chlorophyll, as well as its commercial feasibility. Plaintiff was required to assist the defendants in their study and research and to assign to the defendants any patent application filed by him respecting the invention and supplemental developments. The expenses incurred in the filing and prosecution of applications for patents was to be borne 7/10 by the defendants and 3/10 by the plaintiff.

Part II of the contract required the plaintiff to furnish defendants with the sum of $25,000 in cash for use in constructing and operating a pilot plant, to be operated by the defendants in the conduct of animal and clinical experimentation. The pilot plant was constructed, equipped and experimental work performed by the defendants, all of which was paid for out of the money advanced by the plaintiff, and an accounting rendered to him for the money so expended.

Thus we come to the provisions of Part II, around which the issues in suit directly revolve. It was provided that whenever it should be determined from the pilot plant operations and the animal and clinical experimentation that their production of colloidal chlorophyll and its sale and use for pharmaceutical, therapeutic and medicinal purposes had become commercially feasible, the plaintiff was required within thirty days after such determination to give notice of his election to go forward in accordance with the terms of Part III of the contract, involving an investment by plaintiff of $125,000 for a controlling interest in a corporation to be organized for the commercial exploitation of colloidal chlorophyll. In the absence of such notice, it was provided that the agreement between the parties would thereupon terminate and all rights of the plaintiff would cease and determine and neither of the parties should have any claim against or obligation to each other.

The determination that the production of colloidal chlorophyll and its sale and use for pharmaceutical, therapeutic and medicinal purposes was commercially feasible was to be made after December 31, 1946, by a written certificate to that effect, executed by one of the defendants, such determination to be effective as of the date of service thereof upon the plaintiff. It was further provided in said agreement that such determination and certificate should in no event be made by either of the defendants, except in good faith upon the basis of reliable research data and information theretofore supplied to the plaintiff, together with the conclusions drawn therefrom by one of the defendants.

On December 3, 1946, defendants prepared and delivered to the plaintiff a written report of their activities, experiments, and the results obtained therefrom. On January 16, 1947, the defendant Dr. Boris Berkman executed and delivered to the plaintiff his written certificate, purportedly in compliance with the provision of the contract relative thereto.

The plaintiff contended that the notice and the report furnished him did not comply with the terms of the contract for the reason that there was no proper showing as to the medicinal value of the product or its commercial feasibility and that the certificate was not made in good faith. Obviously, if the certificate was in compliance with the contract, plaintiff was required to go forward under Part III thereof or suffer a termination of the contract.

The District Court made extensive findings of fact and entered its conclusions of

law. For the present it is sufficient to note that the court held that the certificate, executed by the defendants, complied with the terms of the contract and that it was terminated by reason of plaintiff's failure of election to go forward under Part III.

We now come to the judgment from which the plaintiff appeals, which constitutes the controlling factor on the instant motion. In enumerated paragraphs the judgment declares and fixes the rights of the parties. Paragraphs 1, 2 and 3 contain declarations relative to the court's jurisdiction and that the certificate executed and delivered to plaintiff by the defendant Dr. Boris Berkman on January 16, 1947 complies in all respects with the terms of the agreement. Paragraph 4 declares that the agreement terminated on February 16, 1947, "by reason of plaintiff's failure to give notice in writing to either of the defendants of his election to perform or go forward with the terms of Article III of said agreement, and the rights of the plaintiff under said agreement ceased and determined on February 16, 1947, and none of the parties hereto have any claims or obligations to any of the other parties under the terms of said agreement, except as hereinafter stated." Paragraph 5 declares that the pilot plant, including materials, equipment, appliances, etc., "belong to and are the property of the plaintiff." (This is the provision of the judgment appealed from by the defendants in No. 9535.) Paragraph 6, which is the basis for the controversy on this motion, declares: "That plaintiff is entitled to the sum of $973.98 remaining unexpended out of the sum of $25,000 furnished by plaintiff to defendants, as provided in said contract, and that plaintiff do have and recover of and from defendants the sum of $973.98."

On November 6, 1947, and subsequent to the appeals to this court, the plaintiff filed in the clerk's office of the District Court a document acknowledging receipt of $973.98, in satisfaction of paragraph 6 of the judgment. The question for decision is whether the plaintiff, after accepting and satisfying this part of the judgment favorable to him is precluded from pursuing an appeal from other portions of the judgment decided against him.

Numerous authorities are cited by the parties in support of their respective contentions, which we think unnecessary to discuss in detail because there is little, if any, dispute as to the rule. The difficulty arises from its application.

The general rule is succinctly stated in Albright v. Oyster, 9 Cir., 60 F. 644, thus: "No rule is better settled than that a litigant who accepts the benefits or any substantial part of the benefits of a judgment or decree is thereby estopped from reviewing and escaping from its burdens. He cannot avail himself of its advantages, and then question its disadvantages in a higher court."

Again, it is stated in Spencer v. Babylon R. Co., 2 Cir., 250 F. 24, 26, as follows: "The appeal of the county treasurer must be dismissed. The general rule is well settled that unless there is a separable controversy, or unless there is some sum to which the appealing party is entitled in any event, he may not accept the benefit of the decree and later appeal."

Some of the numerous cases where the same general rule has been stated and applied are Boylan v. Boylan, 349 Ill. 471, 182 N.E. 614; People v. Lee, 286 Ill.App. 1, 5, 3 N.E.2d 389; Allen v. Bank of Angelica, 2 Cir., 34 F.2d 658, 659; Oriole Phonograph Co. et al. v. Kansas City Fabric Products Co. et al., 8 Cir., 34 F.2d 400, 401; Altman v. Shopping Center Bldg. Co., 8 Cir., 82 F.2d 521, 526.

The plaintiff, however, contends that the situation comes within the following exceptions to the general rule: (1) appellate rights are not waived where the benefit received is an independent and separable part of the judgment being appealed, and (2) where the appellant is entitled to the benefit received in any event. Cases cited where such exceptions have been recognized are Gilfillan v. McKee, 159 U.S. 303, 311, 16 S.Ct. 6, 40 L.Ed. 161; Embry v. Palmer, 107 U.S. 3, 8, 2 S.Ct. 25, 27 L.Ed. 346; Fifth Avenue Bank of New York v. Hammond Realty Co. et al., 7 Cir., 130 F. 2d 993, and Armstrong v. Lone Star Refining Co., 8 Cir., 20 F.2d 625.

A reading of these cases plainly discloses that in each the benefit received from a

judgment or decree or the part satisfied was not related to and had no effect upon the part from which the appeal was taken. As pointed out in the case most relied upon by the plaintiff, Gilfillan v. McKee, supra, 159 U.S. at page 311, 16 S.Ct. at page 9, 40 L.Ed. 161: "There were practically two decrees in this case,—one applicable to the special fund, which, in the bill, the subsequent pleadings, and in the decree, had been kept as a distinct and separate matter * * *. Clearly, his acceptance of a share in the special fund did not operate as a waiver of his appeal from the other part of the decree disposing of the general fund. There is nothing inconsistent in his action * * *."

In Fifth Avenue Bank of New York v. Hammond Realty Co. et al., supra, there were two defendants. A judgment was rendered against one defendant in favor of the plaintiff, but in favor of the other defendant and against the plaintiff. The judgment in favor of the plaintiff was satisfied, and it appealed from the judgment in favor of the other defendant. This court applied the exception to the general rule on the premise that the plaintiff was entitled in any event to collect against the defendant against whom it had succeeded in obtaining a judgment, and furthermore, that the satisfaction of this judgment would not affect the rights either of the plaintiff or the other defendant, irrespective of whether the judgment favorable to such other defendant was affirmed or reversed.

Another pertinent illustration of the applicability of the exception to the rule is in Armstrong v. Lone Star Refining Co., supra. In that case the appellant in an equity receivership case was awarded and accepted a dividend as a general creditor and appealed from that part of the decree which denied him a preference. As the court observed, 20 F.2d at page 626: "Whether intervener succeeds on his present appeal or not, he will be entitled to share with the other creditors, at least on the basis of the allowance of his claim as a general one. This being the situation, the intervener is within the exception noted to the general rule above stated."

We are unable to discern how it can be contended with any degree of seriousness that the instant situation comes within either of the exceptions to the general rule. The money award in favor of the plaintiff was not independent and separable from the remainder of the judgment and neither was plaintiff entitled to such award in any event. The judgment on its face and the issues upon which plaintiff sought a declaration of rights plainly disclose that the money award was made and could have been made only as a condition subsequent to and depending upon the termination of the agreement. Plaintiff's receipt of that sum and satisfaction of the judgment in that respect is consistent only with the findings and judgment declaring the parties' agreement terminated. The obvious effect of a reversal of that portion of the judgment appealed from by the plaintiff would be to leave the contract in force. Presumably under such circumstances the defendants would be required to resume experimentation and research without the benefit of the balance of the funds which have by the judgment been awarded to the plaintiff and received by him.

Defendants in an effort to escape what appears to be obvious argue on the premise that "Spanel brought this appeal, seeking a reversal of the lower court's judgment insofar as it terminated his rights in the invention." Neither the pleadings, the issues nor the judgment support the premise for such an argument. Any question concerning inventions was at the most only incidentally involved. In fact, a study of the contract leads to the conclusion that it was never contemplated by the parties that the plaintiff should have any property right in the inventions. This is clearly shown not only as to the inventions discovered by the defendants but those by the plaintiff as well. The contract provided that the plaintiff should assist the inventors in their further study and research and that any patent application filed by him with respect to any developments or improvements "shall forthwith upon filing be assigned to the inventors." While there is no express provision in the contract relative to the ownership of inventions in case of its termination, it is plainly inferable that they are the property of the defendants. It is only in the event that the plaintiff elects to go for-

ward under Part III of the contract that he might acquire an interest in the inventions and that would be by reason of his ownership of stock in the corporation to be organized by him and to which the inventions were to be assigned. Such ownership, however, was conditioned upon the question on which the plaintiff sought a declaration of rights, which was the issue before the court, namely, whether the defendants had complied with the contract with reference to the giving of notice and making the certificate so as to require the plaintiff to exercise the option as to whether he would proceed under Part III of the contract, and this was the issue decided below.

What we have said concerning the inventions is likewise applicable to the funds unexpended by the defendants which, by the judgment, have been awarded to the plaintiff. There is nothing in the contract which provides that said funds should be returned to the plaintiff in the event of its cancellation. No cross-appeal, however, has been taken by the defendants from this portion of the judgment, and we are not concerned with the reason which motivated the court in awarding this money to the plaintiff. The contract does provide that in the event that the plaintiff elects to go forward under Part III of the contract, the defendants shall turn over to the corporation any unexpended balance. This all goes to show that the award of this unexpended balance to the plaintiff was contingent upon the judgment terminating the contract, and without this judgment of termination, there could have been no reason or basis for the judgment awarding the unexpended balance to the plaintiff.

Plaintiff, however, attempted to save the situation by offering to deposit with the clerk of this court the amount he received in satisfaction of the monetary award, "to be held until final disposition of the appeal." Plaintiff does not suggest who would be entitled to the money when the appeal is disposed of. We are cited no authority and we know of none which would permit an appellant to so readily circumvent the general rule which we have discussed and which confronts the plaintiff in his instant appeal. And to permit the plaintiff to do so would render the rule meaningless. It is to be noted that the plaintiff has not offered to make restitution to the defendants either prior or subsequent to a consideration of his appeal on the merits. We are, therefore, not called upon to consider what ruling should be made in a situation of that kind.

In our view, the conclusion is inescapable that plaintiff is estopped from further pursuing his appeal and that defendants' motion to dismiss must be allowed. It is so ordered.

Defendants' appeal in No. 9535 may be disposed of in short order. It is from that portion of the judgment which awards the pilot plant, including material, equipment, appliances, etc., to the plaintiff. It is true, as argued by the defendants, that there is no provision as to the disposition of this property upon the termination of the contract. As we have pointed out in appeal No. 9534, the inventions and the unexpended balance in the hands of the defendants were, in case plaintiff proceeded under Part III of the contract, to be assigned to the corporation. There was a similar provision as to the pilot plant, equipment, etc. The contract does provide that the defendants are not to receive any compensation for their services. To permit them to retain any part of the property paid for by plaintiff's money would in effect be an award of compensation to them. While the question presented on this cross-appeal is not free from doubt, we are unable to say that the court below erred in this respect.

That portion of the judgment involved in the defendants' cross-appeal is, therefore, affirmed.