### INGRAM v. GROVES et al.

No. 10228—Opinion Filed Nov. 15, 1921.

Rehearing Denied Jan. 10, 1922.

(Syllabus)

1. **Appeal and Error—Accepting Benefits of Judgment—Right to Appeal.**

A party to an action who voluntarily accepts from his adversary the benefits accruing to him under a judgment cannot question the validity of such judgment in this court on appeal, and thus deny the rights flowing to such adversary under said judgment.

2. **Same.**

When a party to an action voluntarily accepts the benefits accruing to him under a judgment, he thereby recognizes the validity of such judgment as against him. Such act on his part operates as a waiver of his right to prosecute an appeal therefrom or to bring error to reverse it.

3. **Same—Moot Question.**

Where a party to an action by any voluntary act on his part recognizes the validity of a judgment, all questions he could have raised in an appellate court affecting its validity have become moot.

4. **Same—Dismissal of Appeal.**

When it appears that the questions presented in an action or proceeding pending before this court have become moot, the action or proceeding will be dismissed. State ex rel. Freeling, Atty. Gen., v. Taylor et al., Excise Board of Oklahoma County, 82 Okla. 220, 200 Pac. 149.

Error from District Court, Muskogee County; R. P. deGraffenried, Judge.

Action by Johnson Groves and T. B. Mathews against A. T. Ingram to obtain a decree of court that a certain agricultural lease is in fact, a mortgage, and to cancel the same. Judgment for the plaintiffs canceling the lease. Defendant appeals. Dismissed.

William Neff and L. E. Neff, for plaintiff in error.

Myron White and W. J. Crump, for defendants in error.

MILLER, J. This action was commenced in the district court of Muskogee county on November 10, 1917, by Johnson Groves and T. B. Mathews, as plaintiffs, against A. T. Ingram, as defendant, for the purpose of canceling a certain five-year agricultural lease on 50 acres of land described as the northeast quarter of the southwest quarter of the southwest quarter and the southeast quarter of the southwest quarter of section thirty-six (36), township eleven (11) north, range nineteen (19) east, in Muskogee county, Oklahoma.

The case was tried to the court without the intervention of a jury. At the conclusion of the trial the court made its findings of fact and announced its judgment thereon in favor of the plaintiffs, canceling the lease on condition that the plaintiffs pay to the defendant a certain sum of money. The defendant filed a motion for a new trial, which was overruled by the court; saved all necessary exceptions, gave notice of appeal, and brings the case to this court for review. He appears here as plaintiff in error.

The facts, so far as neccessary to a complete understanding and determination of this case, are as follows:

On March 4, 1916, Johnson Groves was the owner of and in possession of the land above described. On that day he executed a lease in writing whereby he leased and let to A. T. Ingram the above-described land for a period of five years beginning on the first day of January, 1917, for a consideration of $200, payable $40 on January 1, 1917, and $40 on January 1st each year thereafter during the life of the lease.

On December 4, 1916, Johnson Groves and Jennie Groves executed a lease in writing whereby they leased the above-described land to defendant in error T. B. Mathews for a period of five years, beginning January 1, 1917, for a consideration of $150, to be paid $30 on December 31, 1917, and $30 on December 31st of each succeeding year.

The petition alleged the execution of the leases above referred to. That Johnson Groves, a the time of the execution of the A. T. Ingram lease, was indebted to In-

gram in the sum of approximately $500. That said lease was given to Ingram to secure said indebtedness, and not as an absolute five-year lease, but was subject to be canceled upon the payment of the indebtedness. That Johnson Groves had paid $250 on said indebtedness, leaving a balance of $251.41. That he had obtained further credits from Ingram amounting to approximately $83, which at the time of bringing this action left a balance due Ingram in the sum of $334. The petition alleged that Johnson Groves had offered to pay Ingram said sum of $334 and demanded the cancellation of the lease. It also alleges the execution of the lease to T. B. Mathews, and that the lease from Johnson Groves to T. B. Matthews is in full force and effect, and that Mathews is entitled to the possession of the premises.

The answer, in addition to a general denial, specifically denies that Mathews has any interest in the land, and alleges that Johnson Groves, prior to the commencement of this action, sold the land to one Julius Phillips, who is the owner of the property, and that the plaintiffs have no right to litigate the validity of defendant's lease.

The plaintiff in error very ably argues four assignments of error, which it will not be necessary to specifically set out.

In the brief of the defendants in error they first present the judgment of the court; that they have complied with it, and plaintiff in error has accepted the fruits of the judgment. They move this court to dismiss the appeal because the questions presented have become moot. We are compelled to agree with the contentions of the defendants in error.

On the trial of the case the plaintiff in error testified in part as follows:

"By the Court: Wait a minute. I want to find out how much you claim to be—that Johnson Groves owes you. A. Well, just up to the 1st of January— By the Court: I mean now—I mean in other words, if I should hold that this is a mortgage I would want to know what that contract was—I mean what he owed you secured by this if it was a mortgage. A. His original note was $251 and an additional sum I furnished him last year but I haven't got it in that. I suppose if I was asked the account it would be what he actually owed at this time. By the Court: Well, what is that? A. After allowing credit for this last year he would owe $70. By the Court: How much? A. It would be that but if the lease would be canceled it would be a $40 credit—you see we gave him credit for $40 last year, leaving a total now of $71.80. By the Court: That he owes you now? A. Yes, sir. By the Court: All right."

At the close of the trial of the case, which occurred on the 23rd day of April, 1918, the court announced its findings of fact and conclusions as follows:

"By the Court: I find from the evidence in this case that during the year 1916 the plaintiff executed a lease on the land in dispute to the defendant for a period of five years at the rate of $40 per year, this amount to be applied on an indebtedness then due by the plaintiff to the defendant and at this time the plaintiff requested the defendant not to put the lease on record. I find that subsequent to this the plaintiff executed a lease on the same land to the other plaintiff, Mathews. I further find from the evidence that at the time the lease from the plaintiff to the defendant was executed that it was the intention of the parties that it was executed to secure the payment of a debt then due by the plaintiff to the defendant, with the understanding that the payment of the said debt was what the defendant was after and that the instrument, though a lease upon his place, was intended as a mortgage. I conclude from the above finding of facts that Mr. Ingram, the defendant, was entitled to the possession of the place for the year 1917 and that the plaintiff should have credit on his indebtedness for $40 for that year's rental and that, with this credit, the plaintiff is now indebted to the defendant in the sum of $71 and upon payment of which the lease from Groves to Ingram will be canceled and set aside. To all of which the defendant excepts and also the plaintiff excepts."

On the 27th day of May, 1918, the motion of Ingram for a new trial was overruled, and the court made the following order:

"Now, on this 27th day of May, 1918, the motion of the defendant for a new trial duly comes on to be heard and the court does order that the same be overruled, to which order the defendant excepts and in open court gives notice of his intention to appeal to the Supreme Court from the judgment and order overruling his motion for a new trial, and the court directs the clerk of the court to enter such notice of his intention to appeal upon the trial docket of the court and the defendant prays an extension of time to make and serve his case-made on appeal and to be allowed to supersede the judgment so far as the same cancels his lease, which is granted, and the court for good cause shown allows the defendant 60 days from this date within which to make and serve his case-made on appeal, the plaintiffs to have ten days for suggestion of amendments and the same to be settled on five days' notice, and the court does order that the portion of the judgment canceling the defendant's lease from the date thereof be superseded pending the appeal provided the defendant within 20 days from this date gives a supersedeas bond in the sum of $500 and

file his petition in error in the Supreme Court within 120 days."

Thereafter, and on June 12, 1918, the following journal entry of judgment was filed in the office of the court clerk:

"Decree.

"Now on this 23rd day of April, 1918, this cause coming on to be heard, the plaintiffs appearing in person and by their attorneys and the defendant appearing in person and by his attorney and both parties announced ready for trial and the court, after hearing the evidence, arguments of counsel and being fully advised in the premises upon due consideration finds: That during the year 1916, the plaintiff, Groves, executed a lease on the land in dispute to the defendant, Ingram for the period of five years at the rate lease contract heretofore executed by the plaintiff, Groves, to the defendant, Ingram, in tiff, Groves, to the defendant; and that subsequent to the execution of the said lease the plaintiff, Groves, executed a lease on the same land to his coplaintiff, T. B. Mathews. The court further finds that the lease executed by the plaintiff, Groves, to the defendant was executed to secure the payment of a debt then due by the plaintiff to the defendant and that the instrument executed, though a lease upon its face, was intended as a mortgage.

"The court further finds that the defendant was entitled to the possession of the land in dispute for the year 1917, and that the plaintiff, Groves, should have credit on the indebtedness due by him to the defendant in the sum of $40.00 for that year's rental. The court further finds that the plaintiff, Groves, is now indebted to the defendant, Ingram, in the sum of $71.00, upon payment of which the lease from the plaintiff, Groves, to the defendant, Ingram, should be canceled and set aside. And it appearing further to the court that said $71.00 has been paid by the plaintiff, Groves, to the dendant, Ingram, and that the defendant, Ingram, has accepted same.

"It is therefore, considered, ordered, adjudged and decreed by the court that the lease contract heretofore executed by the plaintiff, Groves, to the defendant, Ingram, in the year 1916 and mentioned and described in plaintiffs' petition herein be and the same is hereby annulled, set aside and held for naught from this date.

"It is further considered, ordered, adjudged and decreed by the court that the plaintiffs do have and recover of and from the defendant, A. T. Ingram, one-half of all cost in this suit laid out and expended, taxed at _____dollars for all of which let execution issue.

"R. P. de Graffenried, Judge.

"To all of which the defendant excepts."

It is conceded by plaintiff in error, Ingram, in his reply brief, that he accepted the money specified in said judgment to be paid as a consideration for the cancellation of the lease. He contends that he was entitled to the $71 in any event, and that by accepting it he did not acquiesce in the judgment, and cites a large number of cases which he claims support this contention.

It has been settled in this jurisdiction that when a party to an action has voluntarily acquiesced in or ratified, either partially or in toto, a judgment against him, he cannot thereafter appeal from it. Elliott v. Orton, 69 Oklahoma, 171 Pac. 1110; Haskell v. Ross, 71 Oklahoma, 175 Pac. 204; Home Builders Lumber Co. v. White, 75 Okla. 294, 183 Pac. 725; Dunn v. State (Okla. Cr.) 196 Pac. 739.

In Barnes et al. v. Lynch et al., 9 Okla. 11, 59 Pac. 995, the court announced the rule as follows:

"A party who voluntarily acquiesces in or ratifies, either partially or in toto, a judgment against him, cannot appeal from it. Where plaintiffs brought action, claiming to be the owners of certain lands, praying a decree for absolute title, and for the quieting of the same, and the decree was for the defendant, decreeing that the defendant was the owner of the lands, from which decree plaintiffs appealed, and pending appeal, on supplemental petition in the trial court, plaintiffs claimed to have expended individual moneys in the purchase of the lands under circumstances that would entitle them to an equitable lien for the amount expended, and had a referee appointed to make an accounting of the moneys so expended, and asking that the amount so found should be decreed an equitable lien upon the land, held, that such subsequent proceeding, being inconsistent with the assertion of absolute ownership and title, was an acquiescence in and ratification of the judgment, and that their appeal should be dismissed."

In Lohr & Trapnell et al. v. H. W. Johns-Manville Co. et al., 64 Okla. 79, 166 Pac. 124, the court said:

"Plaintiff, J. M. Co., sued defendants in the superior court of Muskogee county on account for material furnished L. and T., subcontractors, and secured a judgment for $800 against the trustee in bankruptcy of L. and T., and against the T. B. Co., the contractor, and the Southern Surety Company as surety on the bond, and they appealed. While the same was pending, the trustee in bankruptcy of L. and T. sued the T. B. Co. and another surety company in another court on a claim for a greater amount than T. B. Co. owed L. and T., whereupon the T. B. Co. pleaded and was allowed the amount of said judgment as a set-off against the claim of L. and T., and judgment was rendered against said T. B. Co. in said action in favor

of L. and T. for the balance of their claim, which judgment the T. B. Co. paid. Held, that the validity of the judgment appealed from was so far recognized by defendants L. and T. and the T. B. Co. as to constitute a waiver of their appeal, and the appeal will be dismissed as to them. Held, further, that the appeal will not be dismissed as to the Southern Surety Company upon motion of defendants in error, for the reason that said surety company was not a party to the case in which said judgment was pleaded and allowed as a set-off."

In City of Lawton v. Ayres, 40 Okla. 524, 139 Pac. 963, this court said:

"Any act on the part of a defendant by which he impliedly recognizes the validity of a judgment against him operates as a waiver to appeal therefrom or to bring error to reverse it."

The plaintiff in error cites the case of Luse v. Steele, 52 Okla. 248, 152 Pac. 1074, but this decision does not support the contention of the plaintiff in error, as a reading of the syllabus will very readily disclose the judgment was in two parts, and the court was considering and determining separate and distinct matters. The syllabus reads:

"In a case where judgment in two parts, considering and determining separate and distinct matters, was rendered on different days, and the first part was complied with by delivering a deed pursuant thereto before the rendition of the second part, which determined the only remaining question, on an accounting, of the balance due one of the parties, held that compliance with that part of the judgment providing for the delivery of the deed cannot be construed as an admission by plaintiff in error that the subsequent proceedings upon which the issue as to the balance due the opposing party was determined would be or are correct, or as a waiver of errors occurring in such proceedings, where the reversal or modification of the judgment could in no manner deprive defendant in error of his status or any right under the conveyance so delivered to which he would otherwise be entitled. Plaintiff in error could be estopped to pursue his remedy by appeal only by conduct inconsistent with the assertion of his right to have the action of the court upon the only controverted question in the case, the matter of the balance due his opponent, reviewed."

The opinion above quoted from cites the following cases: Embry v. Palmer, 107 U. S. 3, 2 Sup. Ct. Rep. 25, 27 L. Ed. 346; Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. Rep. 486, 32 L. Ed. 932; Gilfillan v. McKee, 159 U. S. 312, 16 Sup. Ct. Rep. 6, 40 L. Ed. 161; Hodges v. Smith, 34 Tex. Civ. App. 635, 79 S. W. 328; Tyler v. Shea, 4 N. Dak. 377,

61 N. W. 468, 50 Am. St. Rep. 660; Morriss v. Garland, 78 Va. 215.

The plaintiff in error has quoted from the cases above cited. We have examined each and all of the cases, and find that the case of Embry v. Palmer was decided on the authority of United States v. Dashiel. This opinion was by a divided court. In the dissenting opinion by Mr. Justice Grier, which was concurred in by Nelson and Davis, JJ., it is said:

"I think this writ of error ought to be dismissed. The plaintiff, having elected to take execution and satisfy his judgment, has no longer any judgment upon which the writ can operate. His election to accept and execute his judgment below is 'retraxit' of his writ of error. Such has been the unanimous decision of every court of law that has passed on the question. Appeals in chancery can furnish no precedent for a contrary decision. A decree in chancery may have a dozen different parts, some of which may stand good and be executed, while others may be litigated on appeal. A judgment at law is one thing. The plaintiff cannot divide his claim into parts, and when he obtains judgment for part accept that part and prosecute his suit for more. Having a right to elect to pursue his judgment or his writ of error, he cannot elect to have both." U. S. v. Dashiel, 3 Wall. 688 (70 U. S.) 18 L. Ed. 268.

The other cases cited by plaintiff in error all refer back to Embry v. Palmer, supra, as their authority.

The case of Gilfillan v. McKee, supra, is not in point. The syllabus reads:

"The acceptance by one of a share of a special fund under a decree is not a waiver of his appeal from another part of the decree denying him a share in a general fund which, in the action and decree, is kept as a distinct and separate matter."

In the case of Morriss, Trustee, et al. v. Garland's Adm'r et al., supra, in the latter part of the opinion, the court says:

"We have been referred to numerous authorities on the other hand from many other states of the Union, which hold that to accept the benefits of a decree is in effect to release errors, and to enforce the collection of the sums decreed to be paid is a bar to the appeal—that to enforce the judgment by execution, and to receive payment of the same, extinguishes the judgment, and there is nothing left to base an appeal upon.

"The learned and industrious counsel for the appellees have presented to the court an imposing array of well-considered cases from the highest courts of other states on this subject, and sustaining this view, and they commanded the earnest attention and best consideration of this court, but we are

compelled to withhold from them our sanction. They do not seem to be based upon sound principles of justice. It does not seem to us to be right to permit the lower courts to put upon litigants terms of constraint which shall operate under the shadow of their necessities to deprive them of the right to bring their cause to this the tribunal of last resort established by the Constitution of the state for the correction of errors.

"To do so might and doubtless would operate in many cases, as it would in this, in hardship and oppression upon those most dependent upon the courts of the county for their protection. In this particular case, the amount received was accepted, as appears, with the understanding on the part of the appellant that the appeal was to go on. The administrator had announced his purpose to appeal and had procured suspension of the decree to that end, and there was certainly no agreement or understanding of compromise by which it was agreed to release errors, and we think there is no rule which effects that end; we think the unanimous opinion of the Supreme Court of the United States in the late case of Embry v. Palmer, cited above, is well reasoned, and is founded upon sound principles of justice, and we prefer to rest our decision upon the principles there laid down in the cases there cited."

It may be that decrees in chancery may have several different parts and one stand or be executed and another part of the decree which is separate and distinct be reviewed on appeal, but that is not the condition of the judgment sought to be reversed by this appeal. This action, under the procedure at common law, would have been a suit in equity brought to cancel a lease. The amount due from Groves to Ingram was not an issue in the case, only as an incident to the right to cancel the lease. If Ingram had sued to recover the amount due him from Groves, he would have filed his action on the law side of the docket under the common-law pratice.

Under section 4650, Revised Laws of 1910, "the distinction between actions at law and suits in equity, and the forms of such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

Section 5123, Revised Laws of 1910, defines a judgment as follows:

"A judgment is the final determination of the rights of the parties in an action."

In the case of Wells v. Shriver, 81 Okla. 108, 197 Pac. 460, it was held:

"Under the Oklahoma Code of Civil Procedure there can be but one judgment in an action.

"A 'judgment' is the final determination of the rights of the parties in an action. To constitute a judgment under the Code, it must judicially determine all of the issues raised by the pleadings except such as are waived or abandoned on the trial of the case.

"A judgment must not only determine the rights of the parties in an action, but must conclude all further inquiry into the issues joined by the pleadings and leave nothing further to be done except carry it into execution."

The issue in this case was whether or not the lease was given as a mortgage to secure the payment of an indebtedness from Groves to Ingram. If there had not been either an existing debt or a contemplated debt from Groves to Ingram at the time of the execution of the lease, then the lease could not have been construed as a mortgage, for there would not have been any indebtedness to secure. The finding of the court that there was an existing indebtedness was an essential finding in adjudging that the lease was intended as a mortgage to secure the payment of the indebtedness. It was also necessary to determine the amount of this indebtedness so the court could specify what amount should be paid to satisfy the debt and discharge the lien of the mortgage.

Ingram testified on the trial of this case there was $71.80 due to him from Groves. Under the judgment of the court decreeing the lease to be a mortgage to secure the payment of this indebtedness Ingram's right to collect this sum would be to credit Groves with $40 as rent the first of January, and on the following January he would be entitled to a credit for the remainder of the indebtedness. By the judgment and decree of the court, to secure a cancellation of this lease as a mortgage, Groves was required to forthwith pay the entire amount due Ingram. This decree accelerated the payment of the money due from Groves to Ingram and in conformity with the decree Ingram would be entitled to receive the amount due him in cash in lieu of crediting it as rents from year to year. If Groves did not pay the amount due to Ingram, then Groves would not be entitled to a cancellation of the lease.

The court specifically decreed "the plaintiff is now indebted to the defendant in the sum of $71, and upon payment of which the lease from Groves to Ingram will be canceled and set aside." This was not capable of being divided into two separate and distinct items or separate judgments, even under the common-law practice. It could not be construed as a judgment in

a law action to recover $71 and a decree in chancery to cancel the lease. The payment of the $71 by Groves was a condition precedent to the going into effect of the decree canceling the lease. This did not even purport to be a judgment in favor of Ingram and against Groves for $71, upon which an execution could issue. The conditions specified in the decree were if Groves paid Ingram the $71, that ipso facto canceled the lease. Ingram did not have to accept the money when tendered him, but by accepting it he acquiesced in the findings of the court that there was due him from the plaintiff Groves $71; that the lease was in fact a mortgage given to secure the payment of whatever sum might be found due, and if plaintiff would pay him this amount so found to be due, the judgment decreeing a cancellation of the lease (or satisfaction of it as a mortgage) would thereupon become effective. He knew the plaintiff was paying this specific amount of money in compliance with the terms of the judgment; therefore, when he accepted the fruits of the judgment, he recognized its validity and waived any errors leading up to its procurement. He cannot accept from his adversary the benefit accruing to him under a judgment and then question in this court on appeal the rights flowing to his adversary by such judgment.

Ingram knew of all these conditions, and what the results would be if he accepted the money, or at least he should have known. He accepted the money, and thus took no further chance of not being able to collect from Groves or the probable necessity of bringing an action against Groves to recover the amount due him. Having accepted the money under the conditions of the decree, the questions raised by his appeal have become moot and will not be considered by this court.

"When it appears that the questions presented in an action or proceeding pending before this court have become moot, the action or proceeding will be dismissed." State v. Taylor, 82 Okla. 220, 200 Pac. 149.

The appeal is hereby dismissed.

HARRISON, C. J., and KANE, JOHNSON, and KENNAMER, JJ., concur.