**HULL et al. v. TEAFATILLER et al.**

No. 18741. Opinion Filed Feb. 18, 1930.

Rehearing Denied April 15, 1930.

Thos. J. Horsley, O. Guy Cutlip, and Kenneth H. Lott, for plaintiff in error.

Cornelius Hardy, for defendant in error.

BENNETT, °C. November 3, 1921, J. L. Hull and W. M. Janes brought suit in district court of Seminole county, Okla., against J. W. Teafatiller and W. S. Allen, as defendants, for partition of S. E. ¼ of S. E.¼ of sec. 10, twp. 9 north, range 7 E., containing 40 acres. The petition, in the usual form, in effect, sets out that plaintiffs and defendants each own an undivided one-fourth interest in said lands. The prayer is for partition in kind, or if impracticable, for a sale of the lands for division. A return on summons directed to sheriff of Johnston county showed service upon J. W. Teafatiller, but that W. S. Allen was dead. On December 3, 1921, J. W. Teafatiller answered by general denial except it is admitted that the interest of the respective parties in said lands is correctly disclosed in the petition and the prayer is that the lands be partitioned and that defendant's part be set apart to him.

On March 28, 1924, plaintiffs amended their petition, but only to the extent of alleging the death of W. S. Allen and that his one-fourth of the land devolved upon his widow, Lillie, and their three children, who were made parties. A copy of such amended petition ·was forthwith furnished Teafatiller's attorneys.

After a return of process purporting to show service of summons on the said Allen heirs, including Carlton Allen, a minor, the court, on June 17, 1924, and upon proper application, appointed a guardian ad litem for said minor. Upon the last-named date, an answer consisting of a general denial was filed for said infant by his guardian ad litem. June 23, 1924, the court entered a decree correctly determining the interests of the respective parties in said land and appointing commissioners to partition same accordingly, and report their action to the next term of court. In the said order there is a recital that J. D. Teafatiller was present by his attorneys at the time the order was made. But from the proof this was incorrect.

The said commissioners subscribed and filed oath June 24, 1924, and on the same day made their report setting out that notice had been given all persons interested in said land of the time and place of hearing, and that at such time and place, and after actually viewing the land, they found same could not be fairly divided in kind, and they therefore recommended that it be sold and proceeds divided among the owners.

The lands were appraised at $25 per acre. This report was verified June 24, 1924, and was filed June 26, 1924, at which time J. L. Hull, one of plaintiffs, by, his attorney, filed his election to take the land at the valuation fixed in said report, and prayed the court for a decree in accordance with such election.

On June 27, 1924, the court made a formal order showing an examination and approval of the report filed by the commissioners and ordering the sale of the said lands for division; also fixing a fee of $50 for the attorney for the guardian ad litem of the minor, and a fee of $25 for the attorneys for J. W. Teafatiller. The order also directed delivery of said deed to said land to the purchaser, Hull, upon payment of its appraised value to the sheriff.

The issues in this suit are solely between Teafatiller on the one side and Hull on the other. They do not affect, nor are they to be affected by, the rights of the Allen heirs, whose connection herewith up to this point has been detailed only to shed light upon certain contentions of Teafatiller in his motion to set aside the judgment, and they will be referred to briefly later for that purpose only.

On the day after the sale, one of plaintiffs gave Teafatiller a written summary of the sale, and also a statement of the account incident thereto. And within 60 or 90 days thereafter, said Teafatiller received by mail from the court clerk and cashed a check for about $210, which he knew to be his one-fourth of the proceeds of the land, less costs.

The amount of the appraised value was paid in and the deed delivered to the purchaser. From the record that was the end of the matter until about 2½ years thereafter, and on December 10, 1926, when said Teafatiller filed a petition in the cause seeking to set aside and vacate the judgments made and entered in the cause on June 23rd and June 27, 1924, and to cancel the sheriff's deed executed to Hull in pursuance of the judgment and order of confirmation. The original plaintiffs, Hull and Janes, filed answers to the petition. Whereupon, the court, upon hearing, denied the petition to vacate, and thereafter movant filed a motion for a new trial, which motion was heard by the court on March 28, 1927. At the conclusion of the hearing on such motion, the court announced that same would be sustained, and that the evidence offered in the trial on the petition on March 22, 1927, would be reconsidered, whereupon judgment was entered for Teafatiller, setting aside all proceedings therein affecting his title and reinvesting him with his undivided one-fourth interest in said land.

To this action of the court plaintiff excepted, filed motion for new trial, which was overruled, and the case is appealed here.

Since the case was lodged in this court,

the death of Teafatiller has been suggested, and the action has been revived in the name of his heirs.

It is contended by plaintiffs that, at the time Teafatiller's motion for new trial was sustained, there remained in the court no authority to go further and reconsider the original evidence and enter judgment for defendant without introducing other evidence, or giving plaintiff right to do so, but we shall pass up this question, since upon this appeal, the entire record and evidence is before this court for examination and disposition. It is a very familiar rule that, when equity takes in hand the disposition of a case, it will deal conclusively with the whole subject. It would be idle for us to pass simply upon the correctness or incorrectness of the ruling of the trial court upon the motion for new trial where, subsequent to granting of such motion, the court passed upon the merits of the controversy and made final disposition of the case. The final judgment and all the facts and circumstances upon which the same was predicated are before us for examination under proper challenge by the complaining party, and we shall deal with the merits of the controversy in its entirety.

We must view the question presented upon the record as it stands with the petition to vacate filed in the original action against plaintiffs; and our decision on the issue is not to be influenced by any question involved in the rights of the Allen heirs. The issue is simply one between the plaintiff, Hull, the purchaser of the property, and J. W. Teafatiller. It has been repeatedly held to be the rule that a petition to vacate a judgment is addressed to the sound legal discretion of the trial court, and it has also been held that the court listens somewhat more readily to an appeal from an order denying relief than to one granting such relief, where the issue arises upon a petition to set aside a judgment.

It must not be lost sight of, however, that sound public policy, the stability of solemn judgments of courts and the security of litigants demand that, where it is sought to vacate orders and judgment of the trial court, fair on their face, after the expiration of the term, under section 810, subd. 3, C. O. S. 1921, upon parol testimony, the evidence must be clear, cogent and convincing. Morrison v. Swink, 128 Okla. 97, 261 Pac. 209. The court in the opinion in that case uses these words:

"It is usually regarded as elementary that the negligence of counsel is the negligence of

268

the party. The records of our courts are presumed to be correct and to speak the truth, and unless some clear showing is made which ought to strike them down, they must stand as the last word on the subject. They are ofttimes the muniments of title and determine property rights in untold sums. They should not be lightly regarded, nor should they be set aside either upon mere pretext or upon slight testimony."

What are the facts upon which the court set aside the final confirmation of sale and the conveyance made thereunder in this cause? It will first be noted that Teafatiller's petition to vacate sets out that revivor of original action as to W. S. Allen, deceased, was not made in conformity with article 27, c. 3, Procedure Civil of C. O. S. Ann. 1921. It is difficult for us to see in what manner this alleged irregularity might affect defendant Teafatiller. It is next alleged that the original petition was amended by making the Allen heirs parties without an order of court permitting same. We cannot see how that could affect Teafatiller, since the petitions, the original and the amended, are in all substantial respects identical as to Teafatiller. In fact, the only change is a substitution of the heirs of a decedent named as one of the original defendants.

It is further contended that two years and more elapsed from time of filing of original to the date of filing of the amended petition, but certainly that would not destroy the jurisdiction of the court as to parties who had already answered, and where no new issue was tendered which might affect the rights of the complaining party, and where a copy of such amended petition had been promptly delivered to, received by, and acknowledged in writing by, the attorneys for such party. There were various irregularities alleged in the issuance, service, and return of process against the Allen heirs; that the appointment of guardian ad litem was void, and that he did not make proper defense, etc. We frankly confess that we do not see the force of these complaints in this case.

It is further contended that within six days after filing the answer by guardian ad litem, the court decreed the interest of the parties in and to the real estate and appointed commissioners for partition. This in nowise affected Taefatiller, for surely no issue was raised as to interests of the owners in the land and all were praying partition. Also, that plaintiff allowed two years or more to pass without having the case set upon the trial docket, and that said cause was tried before the issues were fully made up. It should be remarked that each of the parties here interested was seeking identical relief, and that such parties had an equal right to demand the attention of the court.

Again, it is contended that the journal entry recited the presence of Teafatiller's counsel, when, in fact, they were not present; that plaintiff and his counsel were residents of Seminole county, and Teafatiller and his attorney were residents of Johnston county, Okla., and that the defendants received no information from the clerk as to the setting of the case, and were, therefore, not at the trial; further, that the commissioners of partition made an unlawful report in that they filed the same on June 26, 1924, instead of at the next term, and that on the 27th of June, 1924, the court entered its order confirming the report of the commissioners and ordering a deed to be made to the purchaser; that the commissioners never gave notice to parties interested; did not view the premises; heard no evidence, and thereby committed fraud upon the said Teafatiller and the court, and that the filing of the election to take the property at its appraised value on the same date on which the report of commissioners of partition was filed, and the calling of the case for trial without notice to the defendant Teafatiller, constituted a fraud upon defendant and prevented his election to take the property. That Teafatiller did not discover the fraud until the 21st of November, 1926, and that at the time he accepted the check for his portion of the purchase price of said property, he did not have knowledge of the proceedings and of the fraud perpetrated against him by plaintiff and by said commissioners of partition, and that, on account of all the above matters, the court was without jurisdiction of the action and the judgment was a nullity. It is urged too that Teafatiller was not a party because no summons was served on him after the filing of the amended petition.

It will not be necessary to discuss in detail the great number of alleged irregularities complained of. It is observable that some of them purport to be jurisdictional in their scope, while others are nonjurisdictional. It has been many times held by this court that, where one seeks to set aside a judgment upon jurisdictional as well as upon nonjurisdictional grounds, irregularities in the service or want of service are thereby waived and that the correctness of the judgment upon that account may not be assailed. Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681, and cases therein cited. It

should be noted (1) that the amount of original interest of Teafatiller in the land is not the subject of controversy; (2) the finding of the commissioners and of the court that the land could not be partitioned in kind is not drawn in question; (3) the finding of the commissioners as to the value of the land and of the court confirming such finding is met by no contrary proof; (4) the fact that Hull paid in, under order of court, the full purchase price is not questioned; (5) there is no dispute under this record that immediately after the sale of the land, Teafatiller was, by Mr. Janes, notified in writing of the sale and of the costs of the sale and a statement of account furnished; (6) after the notice shown in (5) above, Teafatiller received and accepted from the court clerk a check for something over $210, which he knew was his proper proportion of the purchase money arising from the sale to Hull, and kept the same without protest for between two and three years; (7) that attorneys for Teafatiller about the same time received their check from the same source for the amount of their attorney's fee, accepted the same with knowledge of its source and character and have never protested or turned it back. Plaintiff pleads these facts as an estoppel, as an affirmance of what was done, as a waiver, as an election and ratification. (8) It is either in proof or the parties assume it to be true in their briefs that, subsequent to the sale, these lands have risen in value on account of discovery of oil in the neighborhood.

Even a statement of the admitted facts would seem enough to dispose of this case.

An epitome of so much of the oral proof as affects the issues as to Teafatiller is as follows:

J. W. Teafatiller: Lived in Johnston county; did not know plaintiff who lived in Seminole; employed Ratliff & Ratliff, attorneys, to represent witness in partition; knew nothing of record in the case or any changes therein or of appraisement of the property; was not present at trial; received a check for about $200 by mail from clerk of district court of Seminole county about September, 1921; cashed the check; made no attempt to communicate with plaintiff or others; supposed that attorneys had looked after the matter; did not communicate with them or others over the telephone.

Cross-examination:

"Q. Mr. Teafatiller, you knew when you received the check, in September, '24, you knew what the check was for? A. Yes, sir. Q. You knew the land had been sold and that that was your proportionate part of the proceeds of the land? A. Yes, sir, I understood."

Witness received notice from Mr. Janes, one of plaintiffs, that the land had been sold and a statement as to the proceeds. This statement was received from Mr. Janes July 24th, and before witness received check from the clerk for his part of proceeds.

"Q. Now, who represented you Mr. Teafatiller, who represented you in this court? A Ratliff & Ratliff. Q. They represented you up until you received the check and the case closed? A. The only representing they ever done, I employed them when I received notice from the sheriff and I never heard any more from them. Q. You never heard any more from them? A. Nor the case either. Q. You made no personal inquiry yourself? A. No, sir. Q. You relied upon your attorney's record? A. Yes, sir."

Witness knew from the letter from Mr. Janes about the sale the next day after the sale He then called up Mr. Janes and told him he would not have sold his part for $1,000. Witness says he knew nothing of the confirmation of sale, the deed, etc., until after land was sold. One of the attorneys for Teafatiller testified his firm was employed by Mr. Teafatiller in the case, and they filed answer; cannot recall the date. Knew nothing about revivor of action as to Allen heirs, but had no interest in that matter, and would not have objected. Did not know of an amended petition, but later identified a letter from his firm under date of March 31, 1924, acknowledging receipt of a copy of the amended petition. Witness was never in Wewoka and was not present at trial. So far as witness knows, the commissioners for partition never notified witness or his firm. Has no recollection of receiving notice of the setting of the case. His recollection is that his firm wrote clerk of court at Wewoka to notify the firm. Copies of correspondence, if any, had by the firm were later destroyed Witness considered the case closed. Received this information between 1921 and 1925. Has no recollection of receiving a fee in matter. Has no record of such matter. Later, he stated he received a voucher from court clerk of Seminole county dated September 4, 1924, for $25 as attorney's fee in the case. Did not discuss the matter with Teafatiller, except in 1921, and before answer was filed. Witness had access to his office files containing papers in the case, if they kept such file, but has no recollection of ever seeing such file. Has a slight impression that Teafatiller received a check, but does not remember details. It might have been mentioned to wife

ness and forgotten. Presumes his employment ceased when the $25 check came

The other attorney for Teafatiller testified to about the same facts: That they filed answer in 1922, but that was as far as they were able to go. The case dragged along, and they could not hear anything from plaintiff's counsel, and that witness called said counsel and told him that "he wished him to represent us and notify us by letter or otherwise when the case was set for trial," but he did not do so, but said that he would. Never heard from Mr. Moore until after case was disposed of and the check for fee from the court clerk received. That after he received that check, he was no longer employed; had no more to do with case. Had no actual notice of proceeding at all. Witness lived at Tishomingo in Johnston county; client lived at Ragland about ten miles north of Tishomingo in same county. Witness did not know where plaintiff lived and did not know where attorney for plaintiff lived, but thinks he had a communication from him from Wewoka. Witness does not remember the date of his calling Mr. Moore, attorney for plaintiff. Witness thinks that he received copy of amended petition, but had forgotten it.

"Q. And inquired about when it might be tried? A. Well, I don't know now about that time, I don't recall the date of that, but anyhow I called him up on several different occasions—I remember two occasions distinctly."

Witness received the $25 check and cashed it, and, of course, knew what it was for.

If this evidence clearly shows anything, it shows inexcusable negligence. Here was a suit in court for partition of 40 acres of land among four owners interested therein in equal shares. The land appears to have been just ordinary land; the appraisement would seem to indicate this, and there is no evidence that the land at that time was worth a dollar more. Each of the parties was willing, it seems, for partition, and was only anxious that it be done in an equitable manner. The approximate value of this land Teafatiller must have known. He had in it an investment worth a little more than $200. He lived in another county, and he employed a firm of attorneys in this distant county to look after his interests. And thereafter both litigant and his attorneys gave the matter such haphazard attention as would indicate they attached little importance to the proceeding.

This court will go a long way to prevent attorneys in this state from committing frauds upon their brother attorneys, or upon litigants whom they represent. Nevertheless, it must be borne in mind that the serious business of courts must not be impeded and their solemn judgments set aside years after they are pronounced upon the rather vague, general and questionable statements of attorneys of record to the effect that they relied upon the attorneys representing the opposition to inform them of every step in the controversy when it appears that their memories as to dates and attendant circumstances are seriously shaken. The lack of clarity, the forgetfulness, the uncertainty, both as to time and substance and circumstance of counsel and Teafatiller with reference to this matter, is of such nature as to seriously discount their statements. Some light may be thrown on their actions and attitude by the statement of Teafatiller, who said that he had no conversation with any one with respect to this suit, and knew nothing of its from the date he employed counsel in 1921, until he received notice of the sale of the property from Janes in September, 1924.

We would be slow to find fraud upon such testimony. There are two outstanding facts here which seem to negative fraud: First. The land sold for its full value. Second. On the day after the sale, Janes, one of plaintiffs, mailed to Teafatiller information as to the sale, and also including a statement of account, sales, expenses, etc.

We might properly base our conclusion in this case upon the fact that the evidence in the case is rather vague, indefinite and entirely unsatisfactory, in so far as it tends to support the application to vacate the judgment. But we shall not quote in full, nor discuss in greater detail such evidence, for we prefer to base our holding upon a principle upon which there should be no difference of opinion as to its correctness and upon evidence which is uncontradicted

Shortly after the sale of the land a check came to Teafatiller by mail from the court clerk, and this he cashed and the proceeds of which he retained for two or three years without objection. He at that time knew that he was receiving one-fourth of the sale price of the land, less the expenses of sale, for he had in his possession an account showing facts about the sale and the expenses. Teafatiller's lawyers also received their check for their fee and testified that they understood what it was for, and they have retained the money without protest to this time.

Section 5013, C. O. S. 1921, is as follows:

"A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known, to the person accepting."

A kindred section of similar import is section 5247, C. O. S. 1921.

This principle has been applied to judgments. 21 C J. 1212, par. 215; 1 Freeman on Judgments (5th Ed.) p. 529, par. 265; 34 C. J. 362, par. 576.

"Where a party freely and without protest or qualification accepts the benefits of a judgment, he thereby confesses its validity and waives his right to appeal therefrom." Brandt v. Lane, 113 Okla. 14, 237 Pac. 459.

To the same effect is Ingram v. Groves, 84 Okla. 159, 202 Pac. 1019.

The doctrine has been applied to receiving the proceeds of a partition sale. McDaniel v. Stum's Adm'r (Ky.) 65 S. W. 800, and cases therein cited. See, also, Yeldell v. Bank of Elmer, 96 Okla. 184, 221 Pac. 422; Bruce v. Cosden Oil & Gas Co., 119 Okla. 28, 246 Pac. 826.

We are referred to the case of Southwestern Surety Ins. Co. v. Holt, 88 Okla. 281, 213 Pac. 80, as authority for the general statement that,

"In order to create an estoppel by the acceptance of benefits, it is essential that the party against whom the estoppel is claimed should have acted with knowledge of his rights; also, that the party claiming the estoppel was without knowledge of the facts on which he bases his claim of estoppel, that he was influenced by and relied on the conduct of the person sought to be estopped, and that he changed his position in reliance thereon to his injury."

In that case, a minor, whose estate had been misappropriated by her guardian, was charged with ratifying the illegal act of her guardian by accepting the benefits, but it is made clear by the opinion in that case that the evidence as to the conduct of the minor, who had just arrived at her majority, was conflicting, and not definite, and was not such as to operate as an estoppel. The court uses these words:

"The stock, prior to the time plaintiff became of age, was held by a third party as collateral security, together with certain stock owned by the mother. It appears the note was renewed and the plaintiff and her mother executed this renewal note. The stock itself was never introduced in evidence, and while there is some evidence that the mother gave the stock to the plaintiff, it is clear the stock was always held as collateral security even up to the time of being sold. The facts relating to the estoppel are very indefinite and uncertain," etc.

We do not think the doctrine there enunciated applicable here. Here the plaintiff relied upon a judgment of a competent court which had jurisdiction of the parties and of the subject-matter.

The defendant's action in receiving the proceeds of the sale and retaining them for almost three years is just as definite and certain as can be. Teafatiller knew that he was a party to this suit; he knew that he was entitled to be heard before judgment; he knew that he had not been heard, that judgment had been taken, and the lands sold thereunder for a sum also known to him. He received this information immediately after sale and his only protest was an idle gesture of dissatisfaction to Janes, with no indication whatever of an intention to pursue his rights, if he had any. His lawyers knew exactly what Teafatiller knew, and they also, with full knowledge, accepted a part of the proceeds without question. Teafatiller neither consulted his lawyers, nor did his lawyers confer with him. All treated the matter as closed. No effort was made to show that Teafatiller received less than his portion of the land was worth, nor even that he would have elected to take the same at the appraised value, nor that the appraised value was less than the real value of the land.

In our judgment, it would not only be illegal, but immoral, to allow Teafatiller to accept and keep the purchase money and two or three years later assail the regularity of the proceedings under which the land was sold. Judgments should be mutual, and they should be mutually binding. Under this proof, the land brought its fair value. The conduct of Teafatiller in accepting the proceeds may be denominated a ratification of the sale, or a waiver, or an election to disregard any wrong or irregularity, if any such there were. Or it may be denominated just a plain estoppel, but whatever it may be denominated, it is and should be effective against his repudiation of the proceeding out of which the proceeds sprang.

Our holding is not to be construed either as an approval or encouragement of the dilatory manner in which the partition proceeding was first handled, or the unseemly haste in which it was later disposed of. The defendant, if dissatisfied, had his adequate and timely remedy. With the facts before him, he had the right to recognize or to

repudiate the judgment, but he could not do both. Having accepted and retained for two or three years the proceeds of the judgment, under our statute, decisions, and the basic principles of equity, defendant is bound by such judgment.

For the reasons given, we hold that the judgment of the trial court was error and against the clear weight of the evidence, and the cause is therefore remanded to the trial court, who is directed to vacate and set aside the final judgment and decree entered in this cause on March 28, 1927, and also the order of the court sustaining the motion for new trial of the defendant J. W. Teafati'ler, as against plaintiffs M. W. Janes and J. L. Hull, in so far as the interests of J. L. Hull are or may be affected thereby, and to enter such further orders and judgments as may be necessary to reinvest and recognize in J. L. Hull title to the lands in controversy herein as against J. W. Teafatiller, or his heirs, according to the views herein expressed.

LEACH, HALL, HERR, and TEEHEE, Commissioners, concur. DIFFENDAFFER, Commissioner, dissents.

By the Court: It is so ordered.