UNITED ENGINES, INC., Appellee,

v.

McCONNELL CONSTRUCTION, INC., Appellant.

No. 51010.

Supreme Court of Oklahoma.

Sept. 30, 1980.

As Corrected July 31, 1981.

Rehearing Denied Nov. 23, 1981.

Kerr, Davis, Irvine, Krasnow, Rhodes & Semtner by Michael E. Krasnow, Oklahoma City, for appellee.

Kornfeld, McMillin, Phillips & Upp by Joe E. Edwards, Oklahoma City, for appellant.

BARNES, Justice:

This case was commenced as an action on an open account for merchandise sold and services rendered in the overhauling of a bulldozer diesel engine performed by the plaintiff below, United Engines, Inc. (United). The defendant, McConnell Construction, Inc. (McConnell), filed a general denial and cross-petition, seeking damages on a theory of an implied warranty that the repaired engine would be returned in a condition reasonably fit for its intended use. The parties waived the right to jury trial, and the case was tried to the Court. On the day of trial, the parties filed a stipulation as to certain facts, and orally stipulated that $2,144.65 of the amount that United was seeking on open account was due and owing for goods unrelated to the overhaul of the engine involved in the litigation.

After hearing testimony and receiving evidence, the Trial Court, finding that the evidence was inconclusive, entered judgment against United on its suit on an open account on all but the $2,144.65 which was stipulated to. Likewise, the Court ruled against McConnell on its cross-claim, finding the evidence to be inconclusive.

McConnell has perfected an appeal from the judgment against it on its cross-petition, and by prior order of this Court McConnell was designated principal appellant in this case. United counter-appealed on a portion of a judgment against it, arguing that the Trial Court erred in not granting judgment in its favor, for amounts due on the open account, which were not stipulated to. Both parties, in their respective appeals, argue that they did in fact present sufficient evidence to be entitled to judgment.

■ In a jury-waived trial, this Court must accord the judgment the same conclusive effect as if it were based upon a jury verdict. If there is any competent evidence which will support the judgment below, it must be affirmed. *Leveridge v. Notaras*, 433 P.2d 935 (Okl.1967); *Bullard v. Caulk*, 206 Okl. 353, 243 P.2d 691 (1951).

I.

We will first consider McConnell's appeal from the Trial Court's holding that it failed to present sufficient evidence to be entitled to judgment on its breach of warranty claim. Although many issues are raised on appeal, the decisive issue in McConnell's appeal is whether, assuming that an implied warranty were present, sufficient evidence was presented to support an award for damages for breach of such a warranty. The evidence before the Trial Court was as follows:

In April, 1972, McConnell purchased a new Terex 82–40 Bulldozer from a third party not involved in this litigation. Some twenty months later, in December of 1973, McConnell began to experience the first major problems with the dozer, when it began to lack power, smoke, and have heating problems. Prior to experiencing this difficulty in December of 1973, McConnell had itself performed regular maintenance on the diesel engine. It also had replaced fan bearings, universal joints, serviced the

hydraulic pump and valve for the machine blade, and had reconstructed a water pump. All these services were performed by McConnell's own mechanics.

United's first contact with the engine came in December, 1973, when United's mechanics overhauled the diesel engine. At that time, the machine had been in operation for 3,025 use hours. Expert testimony at trial showed that a *properly maintained diesel engine* should not require a major overhaul with less than 3,000 to 5,000 use hours in operation.

After United completed this first overhaul, the engine was returned to McConnell and reinstalled by United, which the assistance of McConnell itself McConnell promptly paid for this overhaul, and payment for this overhaul is not in question in the suit at hand.

Some 91 days later, McConnell once again began to experience the same difficulties which had necessitated the first overhaul. United attempted to rectify the problems by having its mechanics replace the engine heads, a water pump and a turbo-head. When these corrective measures were found to be inadequate, the engine was overhauled by United for a second time. McConnell has not paid for this second overhaul, and the amount due for the services rendered in the second overhaul is at controversy in this case.

A few months later, in June, 1974, the bulldozer again failed to operate efficiently for what appeared to be identical reasons as before. At this time, the engine was again overhauled by United—this being the third overhaul. During this third overhaul, an O–Ring was found to be missing. The absence of the O–Ring had resulted in the engine becoming contaminated with dirt. As in the first two overhauls, the engine at this time showed signs of excessive wear. This third overhaul was not paid for. However, McConnell and United entered into an agreement relieving McConnell of responsibility to pay for this third overhaul. In reaching this agreement, United admitted no fault in repairing the engine. Rather, the agreement was made because the par-

ties, who had done business together for 17 years, wanted to maintain their business relationship. There was conflicting testimony as to whether this agreement was meant to forgive the amount owed for the second overhaul.

In December of 1974, the engine once again began to malfunction. This time, however, McConnell did not ask United to overhaul the engine. Rather, McConnell took the engine to L. B. Smith, Inc., who performed a fourth overhaul. The engine at this time once again showed excessive wear. Not all the work performed by the Smith company was necessitated by engine damage. Rather, some work was performed so that the service company would guarantee its work. The Smith company employees, who testified at trial, had no opinion as to why the engine was malfunctioning. Thus, within a year's time, the engine had been overhauled four times and the use hours on the machine for the entire year were between fourteen and fifteen hundred hours. The dozer was eventually sold in 1975, with approximately 1,000 additional use hours on it, and there was testimony at trial that the machine continued to work for another 3,000 hours before needing major repairs.

McConnell asserted that it only needed to show four elements to recover for breach of implied warranty: (1) the service supplier held himself out as a person possessed of the skill and knowledge to perform particular services; (2) that the service consumer relied upon this reputation; (3) that the completed work product failed to comport with the scope of the warranty; and (4) that the service consumer had been injured. The Trial Court held that McConnell was not entitled to damages for breach because "it did not show United did something wrong or didn't act in a workmanlike manner, and that (an act or omission on the part of United) caused their (McConnell's) damages...."

■■ Both parties agree that *McCool v. Hoover Equipment Co.*, 415 P.2d 954 (Okl. 1966), is controlling. In *McCool*, this Court recognized the existence of implied warranty of reasonable fitness in a contract for

work and labor. In that case, plaintiff brought suit to recover from the defendant on a theory of implied warranty when the defendant failed to chrome crankshafts in such a manner as to render them reasonably fit for their intended use. Plaintiff won part of the action and lost another, because the plaintiff failed to sustain his burden of establishing the cause of the failure of the crankshafts, and more particularly failed to place the blame on the defendant. The holding reached in *McCool* points out the fallacy in McConnell's argument. In order to successfully carry the burden of proof in an action of this type, one must show that the person rendering the repair services held himself out to be capable and possessed of the knowledge to render such services, the consumer relied on the repair or its competency, *the action of the service person caused the substantial failure of the apparatus,* and the consumer was injured by this subsequent failure. This is not to say that one has to establish that the services rendered were done in a negligent manner in order to recover. Rather, one must establish *the causal relationship between the services rendered and the damages sustained.* In the case before us, the Trial Court found that McConnell had failed to establish this causal relationship—the Trial Court finding the evidence presented inconclusive. We find that the Trial Court's ruling is justified by the evidence. In addition to demonstrating that until the time of its initial breakdown, the engine had been repaired and maintained by McConnell's own mechanics, the evidence also showed that at the time of the first, and subsequent, overhauls, the engine showed excessive wear. Additionally, the mere fact that the engine functioned properly after the fourth overhaul conducted by L. B. Smith, Inc., does not in and of itself necessarily mean that any act or omission on the part of United caused the engine to malfunction within the short time after the overhauls it performed. The evidence showed that some of the repair work done by the Smith company was not necessitated by engine damage, but was performed to enable Smith to guarantee its work. No such additional repair or parts were provided by United. We think that reasonable men might differ as to whether under this evidence a causal relationship was established between the services performed by United and the continued malfunction of the engine. This being the case, we cannot say there is no competent evidence supporting the Trial Court's decision. As the Trial Judge was sitting both as trier of facts and evidence, we must affirm the Trial Court's holding, as we are obliged to do so if there is any competent evidence reasonably supporting its judgment.

## II.

We next consider United's cross-appeal, which was perfected from that portion of the Trial Court's order which denied it relief on its suit on an open account to collect for the services rendered in repairing the diesel engine. The first issue to be considered is whether United's appeal should be dismissed on the grounds that United waived its right to appeal by accepting benefits of the judgment appealed from. Although the general rule in this jurisdiction is that a party to an action who voluntarily accepts benefits of a judgment waives his right to appeal,[1] that rule is not applicable in situations such as the one before us. We think the rule of law more appropriate to the situation before us was aptly stated by the North Dakota Supreme Court in *Tyler v. Shea.*[2] In that case, the Court stated:

> " . . . if it is possible for him [a successful litigant] to obtain a more favorable judgment in the appellate court without the risk of a less favorable judgment from a new trial of the whole case, . . . then the acceptance of what the judgment gave him is not inconsistent with an appeal for the sole purpose of securing, without retrial of the whole case, a decision more advantageous to himself."

This Court adopted the view expressed by the Supreme Court of North Dakota in the

---

1. E.g., *Bras v. Gibson,* 529 P.2d 982 (Okl.1974); and *Ingram v. Groves,* 84 Okl. 159, 202 P. 1019 (1922).

2. 4 N.D. 377, 61 N.W. 468, 470 (1894).

case of *Marshall v. Marshall*, 394 P.2d 891 (Okl.1961). In that case, we stated:

"It is conceded that the general rule is, that a litigant who has voluntarily and with knowledge of all material facts, accepted the benefits of an order, decree or judgment of a court, cannot thereafter take or prosecute an appeal to reverse it. However, there is an exception to this general rule where the reversal of that part of the judgment appealed from cannot possibly affect the appellant's rights to the benefits secured or vested under that part of the judgment which was allowed to become final...." [Cites omitted]

In the case before us, United, in perfecting its cross-appeal, asserts a sole proposition of error—that is, the Trial Court erred in not granting judgment in favor of United for the entire amount claimed, and not just the amount due for work unrelated to the repair of the diesel engine. United did not question the validity of the Trial Court's action which awarded it the amount due for services not related to the repair of the diesel engine question. Rather, United only seeks a more favorable judgment on appeal. United argues that it did in fact prove that the entire amount claimed on the open account was due, and simply asks this Court to instruct the Trial Court to enter judgment in that amount. The acceptance of a portion of the judgment in this instance is not inconsistent with the position taken by United on appeal. United does not argue that the amount awarded is not due and owed to them; rather, United argues that that amount and an additional amount should have been awarded.

As the actions taken by United were not inconsistent with its position on appeal, we cannot say that United waived its right to appeal. For this reason, we find no validity to McConnell's position that the appeal should be dismissed on the grounds that United waived its right to appeal.

Having determined that United did not waive its right to appeal, we now consider the sole proposition raised by United in its appeal. The precise point of law urged as error by United was:

"That the trial court, based upon its findings of fact, erred in not entering judgment for United, Inc. for the stipulated amount of the open account due United Engines, Inc. from McConnell Construction, Inc."

For some unknown reason, the written stipulation upon which United relies was not included in the record. In their briefs, the parties differ as to their interpretation of that stipulation. United argues that the parties had stipulated and agreed that the sum of $11,416.16 was due United from McConnell on the open account sued upon, and that the sum was a proper charge for work performed, with McConnell reserving only from a stipulation that the work was properly performed. McConnell on the other hand urges that it only stipulated that if the work had been properly performed that $11,416.16 would have been a reasonable charge, but that McConnell did not stipulate that such amount was due and owing.

Although the litigants' interpretation of the stipulation differ, both agree that McConnell did not stipulate that United's work was properly performed. Because no such stipulation was made, the determinative issue becomes: which party had the burden of proving that the work was or was not properly performed.

In rendering its decision in the open account action, the Trial Court held:

"I think that the Plaintiff [United], notwithstanding the stipulation, must show that they performed in a workmanlike manner, and that no error or omission on their part caused the third overhaul to be necessary if they are going to get paid for the second [overhaul]."[3]

In making this ruling, the Trial Court held that the proper performance of services is an integral part of a prima facie case in suits on an open account for services performed.

3. Although the general rule is that in a jury-waived civil action, a general finding is a finding of every specific thing necessary to be found to sustain a general judgment, and such

In the case before us, there is no dispute that the parties agreed to have United perform the engine repairs. Similarly, there is no dispute that the repairs were performed by United. Additionally, there is no dispute that the amount charged by United was a reasonable charge for the services to be performed, if they were performed properly. In *Entron, Inc. v. Callais Cablevision, Inc.,*[4] the Louisiana Court of Appeals. First Circuit, considered a case similar to the one before us. In that case, an action was brought to recover the balance due on two contracts for construction of cable television systems and on an open account for the purchase of material and supplies ordered by the defendant to supplement and augment the cable system. Because of the defendant's refusal to admit to the correctness of the account sued upon, plaintiff was required to produce proof of the sale of the numerous items on the open account. In determining whether the plaintiff met his burden of proof, the Court held:

> "In a suit on an open account, where the record shows that books were kept in the normal course of business and indicated that merchandise has been sold and delivered, proof of actual delivery of each individual item is not required of a vendor. Such testimony makes out a prima facie case which shifts the burden upon the purchaser to show a lack of receipt or delivery . . . ."

The case before us is analogous to the *Entron* case. The evidence at trial indicated that the repair services had been contracted for, that the repair work had been performed, and, as mentioned above, that the charges for the services were reasonable. We hold that this constitutes a prima facie case, which shifted the burden to the purchaser to show lack of compliance, such as nondelivery, or improper performance.

Because the Trial Court's ruling in favor of McConnell was based upon the premise that the burden was upon the vendor to prove that the services were performed properly, we must reverse the ruling of the Trial Court and remand the case for retrial of the action on the open account.

As retrial is necessary on that issue, we will not consider the attorney fee issues raised on appeal, as the prevailing party is yet to be determined.

For the above stated reasons, the judgment of the Trial Court is affirmed in part, reversed in part, and remanded with instructions.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

LAVENDER, C. J., IRWIN, V. C. J., and HODGES, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

---

a finding will not be disturbed on appeal in the absence of legal error, that rule is not applicable if the Trial Court, in announcing its judgment, expresses its opinion as to certain findings of fact and conclusions of law, when (as in the case before us) the court's statements are properly incorporated into the record. In such a case, the comments made by the Trial Court

may form the basis for reversing the Trial Court. *Miller v. Young,* 172 P.2d 994 (Okl. 1946); *Brinkley v. Patton,* 149 P.2d 261 (Okl. 1944); and *Rogers v. Harris,* 76 Okl. 215, 184 P. 459 (1919).

4. 307 So.2d 787 (La.App.1975).